**In re the Marriage of Gail P. BENDER, f/k/a Gail Papermaster, Petitioner, Respondent,**

v.

**Alan Paul Bender, Appellant.**

**No. C1–03–172.**

Court of Appeals of Minnesota.

Nov. 25, 2003.

Jane Binder, Christine Howard, Binder Law Offices, P.A., Minneapolis, MN, for respondent.

Michael L. Perlman, Perlman Law Office, Minnetonka, MN, for appellant.

Considered and decided by HUDSON, Presiding Judge; RANDALL, Judge; and HALBROOKS, Judge.

## OPINION

HUDSON, Judge.

This is an appeal from a dissolution judgment. Appellant Alan Bender claims that the district court erred by (1) adjusting the valuation dates for three investment accounts awarded to respondent Gail Bender, while refusing to adjust the valuation dates for any of the retirement accounts awarded to him; (2) failing to find that respondent used marital assets to pay her attorney fees and to adjust the property division accordingly; and (3) not calculating child support in accordance with the *Hortis/Valento* formula. We affirm the district court's decisions regarding the valuation date of the investment accounts and decline to address the question of attorney fees. We reverse on the issue of child support and remand for the district court to readdress that question.

## FACTS

The parties married in 1970 and divorced in 2002. The parties have three adult children and one 13–year–old child, H.B. Respondent is self-employed as an oncologist, and the district court found respondent's annual income to be $147,500. Appellant is an epidemiologist with the State of Minnesota and his gross annual salary is $98,134. The parties have various assets including retirement accounts, investment accounts, and a homestead. Appellant argues that the parties stipulated to valuing all of the accounts to be awarded to respondent as of December 31, 2000. But the district court found that because of the subsequent downturn in the market, it was unfair not to "update" the values of the certain investment accounts. The property distribution ultimately awarded each party $1,169,449, including a requirement that respondent pay appellant $260,943 to effectuate the distribution. The district court did not award either party attorney fees.

Regarding custody, the parties entered a parenting plan pursuant to Minn.Stat. § 518.1705 (2000). The plan did not label their custody arrangement. The district court identified the custodial arrangement as joint legal and physical custody. The district court reserved child support and ordered that each party pay for H.B.'s expenses when H.B. was in his or her care. Additionally, the district court ordered respondent to pay for H.B.'s clothing expenses and appellant to pay for extracurricular and sports-related expenses. The district court found that because the parties spend roughly equal time with H.B. and because there was no designated child-support "obligor," neither party needed to pay child support. Further, the district court concluded that calculating child support using the *Hortis/Valento* formula

would have produced only a nominal amount of child support. Finally, the district court found that this child-support arrangement was appropriate because "it is important for [H.B.] to understand that both of his parents are contributing directly toward his care and support."

While appellant filed a notice of appeal, he did not order a transcript, stating that the transcript would cost about $10,000. Respondent unsuccessfully moved the district court for an order compelling appellant to order a transcript. Respondent then filed a motion with this court to dismiss the appeal because of the lack of a transcript. This court issued an order declining to dismiss the appeal at that time, but deferring a final ruling on the motion to dismiss to the panel considering the merits of the appeal.

## ISSUES

I.  Can this court decide this case without a trial transcript?

II.  Do the district court's findings support its adjustment of the values of the accounts awarded to respondent?

III.  Should this court address appellant's allegation that the district court failed to find that respondent used marital assets to pay her attorney fees?

IV.  Do the district court's findings support its child-support determination?

## ANALYSIS

### I

■  We first address whether to dismiss some or all of the appeal because the lack of a transcript precludes us from reviewing some or all of the issues that appellant raises.

■  On appeal, the duty to provide a transcript is on the party seeking review of the rulings being challenged. *See Mesen-*

*bourg v. Mesenbourg,* 538 N.W.2d 489, 494 (Minn.App.1995) (citing *Noltimier v. Noltimier,* 280 Minn. 28, 29, 157 N.W.2d 530, 531 (1968)). While the lack of a transcript does not automatically require dismissal of an entire appeal, lack of a transcript does limit the scope of appellate review to whether the district court's conclusions of law are supported by its findings of fact. *See Duluth Herald & News Tribune v. Plymouth Optical Co.,* 286 Minn. 495, 498, 176 N.W.2d 552, 555 (1970) (addressing limited scope of review); *Mesenbourg,* 538 N.W.2d at 494 (reviewing issues within limited scope of review despite lack of transcript). Because we can review aspects of the issues raised by appellant even without a transcript, the appeal need not be dismissed, and we deny respondent's motion.

### II

■  Appellant argues that the parties agreed to value all of the assets as of December 31, 2000, and that it was unfair for the district court to use a more current valuation date—March 31, 2001—with respect to certain accounts awarded to respondent, without similarly adjusting the valuation date for accounts awarded to appellant. On this limited record and in light of our limited scope of review, we affirm the district court's lack of a symmetrical adjustment in the valuations of the accounts awarded to the parties for four reasons. First, Minn.Stat. § 518.58, subd. 1 (2002), provides the district court with the discretion to adjust both valuations and valuation dates for individual assets:

> The court shall value marital assets for purposes of division between the parties as of the day of the initially scheduled prehearing settlement conference, unless a different date is agreed upon by the parties, or unless the court makes

specific findings that another date of valuation is fair and equitable. If there is a substantial change in value of an asset between the date of valuation and the final distribution, *the court may adjust the valuation of that asset as necessary to effect an equitable distribution.* (Emphasis added.) Here the district court found that, due to market forces, the value of the accounts awarded to respondent decreased by $31,331 between December 31, 2000, and March 31, 2001. Thus, the district court functionally found both that a substantial change in the value of the accounts awarded to respondent occurred between the stipulated December 31, 2000 valuation date and the distribution date and that another valuation date (March 31, 2001) was fair and equitable. Thus, the district court's findings support the exercise of its statutory power to adjust the valuation date for, and the values of, the accounts awarded to respondent.

Second, at oral argument before this court, appellant's counsel candidly acknowledged that the district court had the discretion to adjust the valuation of the accounts as necessary to effect an equitable distribution. We note and appreciate the candor displayed by counsel on this point.

Third, to the extent appellant argues that the district court erred when it failed to make a similar adjustment to the accounts awarded to appellant, he fails to recognize that there were no findings that the accounts awarded to appellant suffered a similar decrease in value that would support an alteration of their valuations or their valuation date. Absent such findings, any adjustment to the valuation of, or valuation date for, those accounts would have been unsupported by the findings.

Finally, we note that, after reviewing evidentiary submissions from both parties, the district court used different valuation dates for different assets and that the district court's findings support both its individual determinations regarding the assets valued, as well as its overall determination that the property distribution was, in the aggregate, equitable. *See* Minn.Stat. § 518.58, subd. 1 (requiring property distribution to be equitable). Because, on this record, the district court's findings support its treatment of the valuation issues, we reject appellant's challenges to the valuation of the accounts awarded to the parties.

## III

Next, appellant contends that the district court inadvertently awarded respondent attorney fees by failing to find that respondent paid her attorney fees with marital assets and adjusting the property division accordingly.

Appellant is raising this issue for the first time on appeal. This court will generally not consider matters not argued and considered by the district court. *Thiele v. Stich,* 425 N.W.2d 580, 582 (Minn.1988) (stating appellate courts do not address issues or theories not raised in the district court). Because appellant did not raise the attorney fees issue to the district court, we do not address it here on appeal.

## IV

Finally we address appellant's contention that the district court erred when it did not calculate child support in accordance with the *Hortis/Valento* child-support formula.

"Parents creating a parenting plan are subject to the requirements of the child support guidelines under section 518.551." Minn.Stat. 518.1705, subd. 8(a) (2002). The guidelines of Minn.Stat. 518.551 create a presumption that a child-support "obligor" will pay child support at the

guidelines amount, unless the district court makes the findings sustaining the setting of support at an amount that deviates from the guidelines amount. Minn. Stat. 518.551, subd. 5(i) (2002). For purposes of Minn.Stat. 518.551, "obligor" is defined as "a person obligated to pay ... support" and includes the caveat that "[a] person who is designated as the sole physical custodian of a child is presumed not to be an obligor for purposes of calculating current support under section 518.551 unless the court makes specific written findings to overcome this presumption." Minn.Stat. 518.54, subds. 1, 8 (2002). Thus, while the guidelines create a presumption regarding the correct *amount* of child support to be paid by the support obligor, the negative implication of the caveat in the definition of "obligor," as well as an extensive body of case law, functionally recognizes additional presumptions that it is the *noncustodial* parent who is the child-support obligor and that the obligor pays support (directly or indirectly) to the *custodial* parent. *See generally,* 1 *Minnesota Family Law Practice Manual* 7.01, at 7–5 (Cathy E. Gorlin ed., LexisNexis 3d ed.2001) (stating, generally, noncustodial parent pays support to custodial parent); *cf.* Minn.Stat. 518.551, subd. 5(a) (stating district court "may order either or both parents owing a duty of support to a child of the marriage to pay an amount reasonable or necessary for the child's support").

"Parents voluntarily agreeing to parenting plans *may* substitute other terms for physical and legal custody, including designations of joint or sole custody, provided that the terms used in the substitution are defined in the parenting plan." Minn.Stat. 518.1705, subd. 2(c) (2002) (emphasis added). " 'May' is permissive." Minn.Stat. 645.44, subd. 15 (2002). Thus, parenting plans need not include the traditional designations of "custodial parent" and "noncustodial parent," which trigger the presumptions regulating application of the child-support guidelines. Implicitly recognizing this possibility, the parenting-plan statute states that "[p]arents *may* include in the parenting plan an allocation of expenses for the child" and that such an allocation of the child's expenses "is an enforceable contract between the parents." Minn.Stat. 518.1705, subd. 8(b) (2002) (emphasis added). Because child-support provisions and traditional custodial designation(s) are both optional in parenting plans, it is possible for a parenting plan to omit either or both of those provisions. If either or both provisions are omitted from a parenting plan, the district court must address the question in the traditional manner. *See* Minn.Stat. 518.1705, subd. 4 (2002) (stating final judgment including alternate terms to designate child-related decision-making responsibilities "must" identify the custodial arrangement using traditional designations); Minn.Stat. 518.17, subd. 3(a)(3) (2002) (requiring dissolution judgment to address support); Minn.Stat. 518.57, subd. 1 (2002) (same). This requirement is consistent with the parallel requirement in non-parenting-plan cases that custody awards be labeled with a traditional custodial custody designation. *See Nolte v. Mehrens,* 648 N.W.2d 727, 731 (Minn.App.2002) (noting, in a case that did not involve a parenting plan, that "when a district court awards physical custody, whether based on a stipulation of the parties or not, it must also identify whether the physical-custody award is for sole or joint physical custody").

■ When a district court imposes traditional custodial designations on a parenting plan that does not include traditional designations, the court-imposed traditional designation "is solely for enforcement of the final judgment and decree where this designation is required for that enforcement and has no effect under the laws of this state, any other state, or another

country that do not require this designation." Minn.Stat. 518.1705, subd. 4. As noted above, the presumptions regulating the identification of a child-support obligor as well as the setting of the amount of child support are based on the traditional custodial designations. Therefore, if a parenting plan omits both use of the traditional custodial designations and a stipulated child-support arrangement, the creation and enforcement of a child-support obligation requires the invocation of the court-imposed traditional custodial designations. Alternatively stated: If a parenting plan omits both use of traditional custodial designations and a child-support stipulation, the statutorily required, court-imposed traditional custodial designations are binding for child-support purposes.

■ Here, the parenting plan proposed by the parties omitted use of the traditional custodial designations and lacked a child-support stipulation, and the district court, consistent with its duty under Minn. Stat. 518.1705, subd. 4, designated the parties "joint legal and physical custodians." Thus, because "[p]arents creating a parenting plan are subject to the requirements of the child support guidelines" and because "[a]pplication of the *Hortis/Valento* formula to cases of joint physical custody is an application of the guidelines[,]" the presumptively correct child-support calculation here was that set out by the *Hortis/Valento* formula. Minn.Stat. 518.1705, subd. 8(a); *Schlichting v. Paulus,* 632 N.W.2d 790, 792 (Minn.App.2001). Under that formula, separate support obligations are set for each parent, but only for the periods of time that the other parent has physical custody of the children, and a single net payment is determined by offsetting the two obligations against each other. *Schlichting,* 632 N.W.2d at 792. Thus, "the presumptively correct, guideline child-support amount for parents with joint physical custody is the amount calculated under Minn.Stat.

518.551, subd. 5(b), for each parent, less the amount offset by the *Hortis/Valento* formula. Any deviation from that amount requires the statutory findings [necessary to support a deviation under Minn.Stat. 518.551, subd. 5(c), (i).]" *Id.* at 793.

Here, not only was the *Hortis/Valento* formula not used to actually set support, but also there was no calculation of the parties' obligations under that formula. The court's findings for deviating from the presumptively correct support application of the *Hortis/Valento* formula consisted of a single sentence stating that its deviation would allow the minor child to know each parent was contributing to his support. This finding alone is insufficient to support deviating from guidelines child support. Among other things, absent a calculation of the parties' obligations under the *Hortis/Valento* formula, the support obligation from which the district court is deviating is not known. Therefore, the district court's findings do not support its child-support determination, and we reverse the district court's reservation of child support and remand for the district court to calculate the parties' child-support obligations in accordance with the *Hortis/Valento* formula. Should the district court determine that a deviation is still appropriate, it shall make sufficient written findings outlining the reasons for the deviation and addressing the criteria in Minn.Stat. 518.551, subd. 5(c), (i).

## DECISION

Because the lack of a transcript does not preclude review of the issues addressed here, we deny respondent's motion to dismiss the appeal. Also, because the district court's findings support its decision to use a more current valuation date for the investment accounts awarded to respondent to ensure an equitable division of property, we affirm the district court's decision on this issue. We further hold that when parties stipulate to a physical-custody ar-

rangement pursuant to Minn.Stat. 518.1705 (2002), but fail to make a traditional custody designation of joint or sole physical custody, the district court's designation of the custody arrangement as sole or joint physical custody is binding for child-support purposes and that when that designation is one of "joint physical custody," the district court must set support under the *Hortis/Valento* formula or make findings explaining why it is not doing so. Because the district court found the parties' custody arrangement to be one of joint physical custody but failed to make findings supporting its refusal to set support at the guidelines amount, the district court's findings do not support its support determination and we reverse the district court's decision to reserve child support and remand for the district court to readdress the support question with or without a reopening of the record, in the district court's discretion.

**Affirmed in part, reversed in part, and remanded; motion denied.**