In re the Marriage of Pamela Marie
MASCHOFF, f/k/a Pamela Marie
Pettit, petitioner, Appellant,

v.

Thad Richard LEIDING, Respondent.

No. A04–1757.

Court of Appeals of Minnesota.

May 31, 2005.

Terence J. Swihart, Lawrence Downing & Associates, Rochester, MN, for appellant.

Michael P. Kircher, Sunde, Olson, Kircher & Zender, St. James, MN, for respondent.

Considered and decided by DIETZEN, Presiding Judge; SHUMAKER, Judge; and HUSPENI, Judge.*

## OPINION

DIETZEN, Judge.

The district court denied appellant Pamela Maschoff's motion to modify a child support order, ruling that the relevant issues had been previously litigated. Because the record does not show that the relevant issues had been previously litigated, and the district court was not precluded from considering appellant's motion, we reverse and remand.

## FACTS

In September 1991, appellant had a son. An April 2002 order adjudicated respondent Thad Leiding the father of the child, but reserved questions relating to child support. Later, the parties agreed to share legal and physical custody of the child, to divide the child's expenses equally, and to establish a parenting schedule. In May 2002, a child support magistrate (CSM) entered an order adopting the parties' stipulation. The order stated that "[t]he parties have agreed that based on the relatively even income of the parents, and the relatively equal parenting access, neither party shall pay child support to the other. Each parent shall be responsible for fifty percent of education and child care expenses." But the CSM's order did not identify whether the shared custody arrangement agreed to by the parties created sole or joint physical custody.

In November 2003, appellant, acting pro se, moved to modify the child support order, requesting that respondent pay child support and that the court modify the provisions relating to medical and child-care support. Appellant argued there had been a substantial change of circumstances that necessitated a modification because respondent was not paying his share of the child's expenses. A hearing on appellant's motion occurred on November 25, at which the CSM concluded that the crux of appellant's motion was to enforce respondent's existing child support obligation. Respondent then moved to have appellant held in contempt for interfering with his access to the child. A hearing on respondent's motion was set for March 1, 2004.

By order filed January 20, 2004, the CSM denied appellant's motion to modify the child support order, stating that there had been no substantial change of circumstances. The order did not specifically address enforcement of respondent's obligations to pay for medical and child-care support. In a January 26, 2004 stipulation, the parties agreed that "each party has expended an equivalent amount for the care and support of their child up to and including November 25, 2003[,]" and that to equalize their expense payments for the period between November 25, 2003 and December 31, 2003, respondent would pay appellant $72.08. The stipulation also referred to the custody arrangement as "joint legal and joint physical custody," and stated that starting January 1, 2004, the parties would provide each other with receipts and a list of all child-related expenses so that they could compare and equalize their respective expenses on a quarterly basis. The CSM incorporated

---

\* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

the January 26 stipulation into a February 2004 order.

In April 2004, appellant filed a motion responding to respondent's motion to hold her in contempt and moved the district court to modify custody and require respondent to pay guideline child support to appellant. In a July 2004 order, the district court denied respondent's motion to hold appellant in contempt. The district court ruled that appellant failed to make a prima facie showing that the existing custody arrangement endangered the child and, without an evidentiary hearing, denied appellant's motion to modify custody. Regarding appellant's motion to modify child support, the July 2004 order observed that in January 2004, the CSM had found no substantial change in circumstances, and in the February 2004 order, the parties had stipulated that they had incurred an equal amount of child-related expenses. Therefore, the district court concluded that the issue of modifying child support "has been litigated. There has not been a change of circumstances. On the basis of Res Judicata, [appellant] is not entitled to further review." This appeal follows the district court's denial of appellant's motion for a rehearing.

## ISSUES

1. Did the parties' stipulated support arrangement reserve the issue of child support?

2. Did the district court correctly preclude appellant from relitigating whether there had been a substantial change in circumstances rendering respondent's monetary support obligation unreasonable and unfair?

3. Did the district court err in failing to order child support and denying appellant's motion to modify the May 2002 order?

## ANALYSIS

■ When reviewing a denial of a motion to modify a child support order, our review is limited to examining whether the district court abused its discretion by acting in a manner that is arbitrary, unreasonable, or without evidentiary support. *Compart v. Compart,* 417 N.W.2d 658, 661 (Minn.App.1988).

## I.

■ An agreement to waive child support is not enforceable because it is contrary to public policy. *Aumock v. Aumock,* 410 N.W.2d 420, 421 (Minn.App. 1987). Attempted waivers of a child's right to support are construed as a reservation of the support issue. *Id.* at 421–22. Appellant argues that the parties' stipulation that neither would pay support to the other was an unenforceable waiver of the child's right to support and, therefore, the district court should have treated it as a reservation of support. But we conclude that the parties did not waive the right to child support.

■ The presumptively appropriate guideline support obligation in joint physical custody cases is the obligation calculated under the Hortis/Valento formula. *Schlichting v. Paulus,* 632 N.W.2d 790, 792–93 (Minn.App.2001); *see* Minn.Stat. § 518.551, subd. 5(i) (2004) (stating child support amount calculated under child support guidelines is rebuttably presumed to be appropriate in all cases). Under the Hortis/Valento formula, "separate support obligations are set for each parent, but only for the periods of time that the other parent has physical custody of the children, and a single net payment is determined by offsetting the two obligations against each other." *Bender v. Bender,* 671 N.W.2d 602, 608 (Minn.App.2003) (citing *Schlichting,* 632 N.W.2d at 792).

Here, the parties' May 2002 support order provided that "[t]he parties have agreed that based on the relatively even income of the parents, and the relatively equal parenting access, neither party shall pay child support to the other." This description of the support arrangement shows that the parties did not stipulate to a waiver of the child's right to receive support,[1] but rather that the net support payment between the parties would be $0 because they had approximately equal incomes and amounts of custodial time with the child. Thus, without explicitly naming it, the parties stipulated to an application of the presumptively appropriate Hortis/Valento formula.[2] Therefore, we conclude that the May 2002 order did not reserve the issue of child support.

## II.

■ Appellant asserts that the district court erred by denying appellant's 2004 motion to modify the May 2002 child support order because the issue of whether a substantial change in circumstances had occurred had already been litigated. We review de novo whether res judicata precludes an issue from being relitigated. *See G.A.W., III v. D.M.W.*, 596 N.W.2d 284,

287 (Minn.App.1999), *review denied* (Minn. Sept. 28, 1999).

■ We first note that support rulings "are not the traditional 'final judgments' that [res judicata and collateral estoppel] were intended to protect." *State ex rel. Jarvela v. Burke*, 678 N.W.2d 68, 73 (Minn.App.2004), *review denied* (July 20, 2004). Further, the availability and application of res judicata and collateral estoppel in family matters is limited, but "the underlying principle that an adjudication on the merits of an issue is conclusive, and should not be relitigated, clearly applies." *Loo v. Loo*, 520 N.W.2d 740, 744 (Minn. 1994); *see id.* at 743–44 & n. 1 (discussing applicability of law of the case, res judicata, and collateral estoppel); *Phillips v. Phillips*, 472 N.W.2d 677, 680 (Minn.App. 1991) (stating "[a] question of changed circumstances, once litigated, may not be retried," but also noting that when modification is sought after denial of a motion to modify, "the first question is whether the change since the denied motion has been significant enough that it might, because of its incremental effect, require the trial court to examine the cumulative changes since the order setting the support level"). For purposes of this appeal, we review the applicability of res judicata to these facts.[3]

---

1. Our conclusion is supported by the February 2004 order adopting the parties' January 2004 stipulation which explicitly clarifies that the parties, in 2002, were awarded joint physical custody. *See* discussion *infra* Part III.

2. Appellant's argument that the May 2002 order was unenforceable assumes that the parties' agreement that "neither party shall pay support" constitutes an improper waiver of the child's right to receive support. This argument fails to recognize that the Hortis/Valento formula involves three support-related dollar amounts: one for each physical custodian, and a third figure which is the net payment derived by offsetting those two obligations against each other. *Bender*, 671 N.W.2d at 608. Appellant's argument also confuses the net payment, which here was $0,

with the parties' support obligations which, according to the portion of May 2002 order addressing their incomes and time with the children, ended up being roughly equal.

3. We have reservations about whether the district court's refusal to let appellant "relitigate" the existence of substantially changed circumstances is more similar to res judicata or to collateral estoppel. *See Loo*, 520 N.W.2d at 744 n. 1 (noting "res judicata, or claim preclusion, prevents parties from splitting claims into more than one lawsuit and precludes further litigation of the same claim. Collateral estoppel, or issue preclusion, prevents a party from relitigating issues actually litigated and necessarily determined in a prior lawsuit.") (citations omitted). As *Loo* notes

■ The issue, then, is whether appellant's two motions presented the same legal issue. While "child support" may be used narrowly to refer only to the monetary amount an obligor pays under the guidelines, "child support" can also be used more broadly to refer to other child-care costs. *Compare* Minn.Stat. § 518.551, subd. 5(b) (2004) (child-support guidelines) *with* Minn.Stat. § 518.54, subd. 4a (2004) ("[s]upport order" includes rulings requiring a party to provide "monetary support, child care, [or] medical support"). Because the substantially changed circumstances required by Minn.Stat. § 518.64, subd. 2, to modify child support must render the existing support obligation unreasonable and unfair, the changed circumstances must pertain to the portion of the obligation sought to be modified. Thus, if multiple types of child support are involved in multiple motions to modify, the mere statement in a prior order that there was no substantial change in circumstances rendering the existing obligation unreasonable and unfair does not necessarily justify invoking res judicata in a subsequent proceeding. *See Loo*, 520 N.W.2d at 744 (holding untimeliness of motion to modify medical insurance payment did not preclude motion to modify maintenance).

Here, the CSM's statements from the bench in the prior proceeding indicate that he determined that appellant's prior motion was one to enforce, rather than to modify, respondent's child support obligation. The CSM and the parties also focused on whether respondent was paying 50% of education and child-care expenses,

not on the parties' monetary obligations under the guidelines. As a result, the CSM's findings address enforcement of respondent's existing child support obligation, and do not address or resolve disputes regarding the parties' incomes and alleged changes since the initial order in their financial or custodial circumstances. On this record, the existence of a substantial change in circumstances rendering respondent's monetary support obligation unreasonable and unfair was not adjudicated by the CSM in the January 2004 order, and the district court should not have applied res judicata to preclude appellant from litigating that question.

### III.

■ Because of its ruling on the res judicata issue, the district court did not address the merits of appellant's motion to modify respondent's monetary support obligation. Therefore, we remand for the district court to address the merits of that motion. *See, e.g., In re Application of Hofstad*, 376 N.W.2d 698, 701 (Minn.App. 1985) (remanding to district court because res judicata and collateral estoppel did not apply and disputed issue had not yet been litigated); *cf. In re Welfare of M.F.*, 473 N.W.2d 367, 370 (Minn.App.1991) (remanding for district court to exercise discretion on discretionary issue which district court had previously failed to address).

We note that the 2002 order was avoidably defective in two respects. First, it failed to clearly address whether the physical custody arrangement is sole or joint. *See Nolte v. Mehrens*, 648 N.W.2d 727, 731 (Minn.App.2002) (stating "when a district

---

however, the principle underlying both doctrines is that a determination on the merits of an issue "is conclusive, and should not be relitigated[.]" 520 N.W.2d at 744. Thus, because both doctrines essentially require an attempt to relitigate something that has already been decided, and because we conclude

that this record shows that the question of changed circumstances regarding respondent's duty of monetary support has not been previously litigated, neither doctrine is satisfied here, and we need not delineate the differences between res judicata and collateral estoppel to resolve this appeal.

court awards physical custody, whether based on a stipulation of the parties or not, it must also identify whether the physical-custody award is sole or joint physical custody").[4] The lack of a clear identification of whether physical custody is sole or joint renders a custody award defective because the district court's labeling of physical custody as sole or joint will dispositively determine whether the physical custody arrangement is sole or joint. Also, that conclusion will determine whether the presumptively appropriate child support obligation is calculated by a straightforward application of the child support guidelines for sole physical custody, or by applying the Hortis/Valento formula for joint physical custody. *See* Minn. Stat. § 518.551, subd. 5(i) (stating child-support guidelines are rebuttably presumed to be applicable in all cases, and addressing setting of support in amount deviating from guideline amount); *Nolte,* 648 N.W.2d at 730 (noting custody label dispositively determines whether custody is sole or joint, which in turn dispositively determines method of calculating presumptively correct support obligation). Thus, absent a clear identification of whether physical custody is sole or joint, the presumptively appropriate method of calculating child support cannot be identified, and the propriety of deviating from the amount calculated cannot be evaluated. *See* Minn.Stat. § 518.551, subd. 5(i) (stating if support is set at amount deviating from guideline amount, findings are required on, among other things, guideline amount and reason for deviating from that amount). Here, the identification of the physical custody arrangement missing from the 2002 order was remedied by the CSM's February 2004 order which identified the physical custody arrangement as joint physical custody.

**■■** But a second problem with the May 2002 order is that it lacked findings addressing the parties' then-existing circumstances. Whether there is a substantial change in circumstances rendering an existing support obligation unreasonable and unfair generally requires comparing the parties' circumstances at the time support was last set or modified to their circumstances at the time of the motion to modify. *Wiese v. Wiese,* 295 N.W.2d 371, 372 (Minn.1980); *Blomgren v. Blomgren,* 386 N.W.2d 378, 380 (Minn.App.1986). Unless a support order provides a baseline for future modification motions by reciting the parties' then-existing circumstances, the litigation of a later motion to modify that order becomes unnecessarily complicated because it requires the parties to litigate not only their circumstances at the time of the motion, but also their circumstances at the time of the order sought to be modified. *See Hecker v. Hecker,* 568 N.W.2d 705, 709 (Minn.1997) (noting, in context of motion to modify stipulated maintenance award, that stipulation identifies "baseline circumstances" against which claims of changed circumstances are evaluated).

For example, the May 2002 order explained that the child support award of $0 to both parties was based on the parties' approximately equal incomes and time with the child, but the order also created a parenting schedule under which the child spent significantly more time living with appellant than respondent. The May 2002 order did not make any written findings explaining this discrepancy or set forth the parties' then-existing financial circumstances as would be necessary to apply or deviate from the guideline support amount. *See* Minn.Stat. § 518.551, subd. 5(b), (c), (i) (2004) (addressing factors to be considered

---

4.  We note that *Nolte* was issued approximate-    ly two months after the 2002 order was filed.

in determining both guideline support obligation and whether to deviate from that amount). Because the CSM's 2002 order lacks findings of fact regarding the parties' incomes and other factors used to determine a support award and appears to be based on a parenting-time schedule that is not equal, the baseline circumstances for evaluating whether there has been a substantial change in circumstances are unclear. As a result, we cannot review whether the record supports the district court's decision.

On remand, the decision to reopen the record for an evidentiary hearing or some other method of receiving additional evidence shall be discretionary for the district court.

### DECISION

The May 2002 support order did not reserve the parties' support obligations. Also, because the CSM's January 2004 order addressed aspects of respondent's child support obligation that are different than those appellant raised in her current motion to modify respondent's monetary support obligation, res judicata does not preclude litigation of appellant's current motion to modify child support. In the future, courts setting child support, even if doing so by adopting a stipulation by the parties, should include findings of fact addressing the parties' circumstances as they exist at the time the obligation is set.

**Reversed and remanded.**