*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A25-0623**

In the Matter of the Welfare of the Child of: B. L. and B. T., Parents.

**Filed November 3, 2025**
**Affirmed in part and remanded**
**Bratvold, Judge**

Washington County District Court
File No. 82-JV-24-91

Theresa R. Paulson, Thrive Legal Services, LLC, St. Paul, Minnesota (for appellant mother B.L.)

Kevin Magnuson, Washington County Attorney, Erin A. Johnson, Assistant County Attorney, Stillwater, Minnesota (for respondent Washington County Child Protection)

J.B., Coon Rapids, Minnesota (pro se respondent foster parent)

Nancy Cottrell, Stillwater, Minnesota (guardian ad litem)

Considered and decided by Slieter, Presiding Judge; Bjorkman, Judge; and Bratvold, Judge.

**NONPRECEDENTIAL OPINION**

**BRATVOLD**, Judge

Appellant parent B.L. (mother) challenges the district court's order transferring permanent physical and legal custody of her minor child, R.T., to respondent foster parent J.B. (foster parent).[1] On the second day of trial on the contested petition of respondent

---

[1] Mother had sole legal and sole physical custody of R.T. at the time of removal, and by the time of the custody trial, R.T.'s father had waived his trial rights.

Washington County Child Protection (the county) to permanently transfer legal and physical custody of R.T. to foster parent, mother submitted a *voluntary* petition to permanently transfer legal and physical custody of R.T. to foster parent. In making its decision, the district court expressly considered mother's voluntary petition along with the testimony received during the first day of trial and the files, records, and proceedings. On appeal, mother contends that the district court's order "is invalid as a matter of law"; alternatively, mother argues that she received ineffective assistance of counsel. Mother urges this court to "remand this matter to trial."

We conclude that any error in the detail of the district court's findings is harmless, the district court did not abuse its discretion in ordering the permanent transfer of legal and physical custody to foster parent, and that mother fails to establish her ineffective-assistance-of-counsel claim. But we also conclude that the district court's order appears to include conflicting or inconsistent terms that we cannot resolve on the existing record. Thus, we affirm in part and remand.

**FACTS**

On September 8, 2022, the county removed R.T., who was about 18 months old at the time, from mother's care and placed R.T. on a 72-hour health and welfare hold.[2] The next day, R.T. was placed with a relative foster parent. On September 13, 2022, the county

---

[2] R.T. was removed from mother's care along with her two siblings, who were aged 11 years and two weeks at the time of removal. During these proceedings, R.T.'s siblings have been returned to mother's care and the district court has discharged them from its jurisdiction. The district court's order challenged in this appeal is about only R.T. For simplicity's sake, this opinion summarizes the procedural history as to only R.T.

filed a child-in-need-of-protection-or-services (CHIPS) petition seeking out-of-home placement for R.T., who was placed under the protective care of the county and remained with foster parent by court order. Mother admitted the CHIPS petition, and the district court adjudicated R.T. in need of protection or services. The district court found that "[o]ut of home placement is relevant to the safety of the family due to concerns of substance use and domestic violence in the home." During the CHIPS proceedings, R.T. was diagnosed with developmental delays and autism.[3]

In February 2024, the county petitioned to transfer permanent legal and physical custody of R.T. to foster parent. On August 12 and 13, 2024, the district court conducted a trial on the county's petition. On the first day of trial, the district court received testimony from mother, foster parent, and the two county social workers who had managed R.T.'s case. The county examined mother, but mother's attorney reserved his direct examination of mother.

On the second day of trial, mother filed a verified petition to voluntarily transfer permanent legal and physical custody of R.T. to foster parent (mother's petition). Mother also testified in support of her petition. First, mother acknowledged and waived her trial rights. Second, mother testified and agreed that she asked her attorney to prepare the petition, that she signed the petition after discussing it with her attorney, and that they "had enough time to go over it together."

---

[3] At a well-child visit in September 2022, healthcare providers expressed concern about developmental delays in R.T.'s communication and gross motor skills. In November 2023, R.T. was diagnosed with level-three autism and global developmental delay.

Third, mother agreed that she had a "long-standing and significant connection" with foster parent, who is the mother of R.T.'s half-sibling. Mother also agreed that foster parent is "fit and proper" to care for R.T. and met all R.T.'s needs while R.T. was in foster parent's care. Fourth, mother acknowledged that any subsequent changes to R.T.'s custody would require a motion. Finally, mother agreed that the permanent custody transfer was in R.T.'s best interests and that the conditions leading to R.T.'s foster placement had not been corrected and "won't be corrected in the reasonably foreseeable future." The guardian ad litem (GAL) supported mother's petition as being in R.T.'s best interests and, when asked to explain, stated that foster parent provides "a safe home," is meeting R.T.'s special needs, and wants mother to be "part of the family." The district court accepted mother's voluntary petition and granted the county's motion to withdraw its petition. The parties also discussed that the custody transfer would be finalized after foster parent received Northstar Kinship Assistance.

On September 12, 2024, the parties filed a "Communication Contact Agreement" which provided that mother and foster parent "may alter the parenting schedule at any time by mutual agreement" and that "[m]ajor decisions regarding [R.T.]'s education, mental health, and medical care will be made by [mother and foster parent] first discussing the issue; and [foster parent] shall obtain input from [mother] regarding these major decisions."

4

The Communication Contact Agreement was signed by mother, the county, R.T.'s guardian ad litem, foster parent, and the district court.[4]

On September 16, 2024, the district court filed an order directing the transfer of permanent legal and physical custody of R.T. to foster parent (September 16 order) and deferring final approval "pending receipt of Northstar Kinship Assistance by [foster parent] on behalf of the child." The September 16 order provides that the Communication Contact Agreement "is adopted and incorporated into this Order."

On April 1, 2025, the district court filed a final order transferring permanent legal and physical custody of R.T. to foster parent (final transfer order). The final transfer order states that it incorporates by reference the "Findings of Fact, Conclusions of Law, and Order dated September 16, 2025 [sic]."

Mother appeals.

## DECISION

Mother raises two issues: (1) whether the district court abused its discretion by ordering the transfer of permanent legal and physical custody of R.T. to foster parent and (2) whether mother received ineffective assistance of counsel during district court proceedings.

---

[4] As part of mother's submission of her petition on the second day of trial, mother's attorney informed the district court that mother and foster parent were "hammering out" a "parenting time agreement."

**I.** **The district court did not abuse its discretion by permanently transferring legal and physical custody of R.T. to foster parent, though a remand is necessary to clarify the terms of the district court's order.**

Mother contends that the final transfer order must be reversed because the district court failed to make required statutory findings and the final transfer order includes terms that appear to be inconsistent.

As a threshold issue, we address the county's argument that mother's challenge to the final transfer order is not properly before this court because mother makes her arguments for the first time on appeal. We recognize that "[a] reviewing court must generally consider only those issues that the record shows were presented and considered by the trial court in deciding the matter before it." *Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988) (quotation omitted); *see, e.g.*, *In re Welfare of Child of R.V.M.*, 8 N.W.3d 680, 696 (Minn. App. 2024) (applying *Thiele* in a juvenile-protection context), *rev. denied* (Minn. July 19, 2024). "This is not, however, an ironclad rule." *Putz v. Putz*, 645 N.W.2d 343, 350 (Minn. 2002) (quotation omitted); *see, e.g.*, Minn. R. Civ. App. P. 103.04 (providing that this court may review issues "as the interest of justice may require").

"The paramount consideration in all juvenile protection proceedings is the health, safety, and best interests of the child." Minn. Stat. § 260C.001, subd. 2(a) (2024); *see, e.g.*, *In re Welfare of Child. of M.L.S.*, 964 N.W.2d 441, 449 (Minn. App. 2021) (applying the best-interests rule in a permanency proceeding). Factors that favor reviewing an issue for the first time on appeal include, first, that the record is adequate and "the issue is not dependent on any new or controverted facts" and, second, that neither party is prejudiced by "not having a prior ruling." *Roth v. Weir*, 690 N.W.2d 410, 413-14 (Minn. App. 2005).

6

This court has also addressed issues raised for the first time on appeal when it determines that the issue would likely arise on remand and therefore that appellate review is "in the interest of judicial economy." *In re Est. of Vittorio*, 546 N.W.2d 751, 756 (Minn. App. 1996).

R.T.'s best interests will not be served by prolonged litigation over the district court's final transfer order. Because the existing record and the briefs submitted by the parties are sufficient for us to decide at least some of the issues raised in mother's brief to this court, and because, if we decline to consider the issues, they would likely arise on remand and simply prolong litigation, we proceed to consider the issues raised in mother's brief.

## A. The final transfer order, along with mother's petition and testimony, sufficiently addresses the four statutory factors required under Minn. Stat. § 260C.517(a) (2024).

Mother first contends that the district court abused its discretion by failing to make "detailed findings" as required under Minn. Stat. § 260C.517(a). Appellate courts review the adequacy of factual findings de novo. *See In re Welfare of M.M.*, 452 N.W.2d 236, 239 (Minn. 1990). We also "review the [district] court's factual findings for clear error and its finding of a statutory basis for the order for abuse of discretion." *In re Welfare of Child of D.L.D.*, 865 N.W.2d 315, 321 (Minn. App. 2015), *rev. denied* (Minn. July 20, 2015).

Minnesota Statutes section 260C.517(a) requires that

> an order permanently placing a child out of the home of the parent or guardian *must include the following detailed findings*:
> (1) how the child's best interests are served by the order;
> (2) the nature and extent of the responsible social services agency's reasonable efforts . . . to reunify the child

7

with the parent or guardian where reasonable efforts are required;

    (3) the parent's or parents' efforts and ability to use services to correct the conditions which led to the out-of-home placement; and

    (4) that the conditions which led to the out-of-home placement have not been corrected so that the child can safely return home.

(Emphasis added.) "Each of these statutory requirements must be proved by clear and convincing evidence." *In re Welfare of Child. of J.C.L.*, 958 N.W.2d 653, 656 (Minn. App. 2021), *rev. denied* (Minn. May 12, 2021). We acknowledge that the same statute also requires compliance with a 15-day deadline for entry of an order after "the close of the proceedings." Minn. Stat. § 260C.517(b) (2024).

Although the final transfer order does not use the same language as the statute, it includes findings as to each of the four statutory factors. Mother is correct, however, that the final transfer order does not include *detailed* findings on each of the four factors. Thus, the district court erred. To gain relief on appeal, however, appellant must establish error along with prejudice. *See Midway Ctr. Assocs. v. Midway Ctr., Inc.*, 237 N.W.2d 76, 78 (Minn. 1975) (stating that, to obtain relief on appeal, an appellant must show both error by the district court and prejudice to the appellant arising from that error); *In re Welfare of Child. of J.B.*, 698 N.W.2d 160, 171 (Minn. App. 2005) (applying *Midway* in a termination-of-parental-rights context); *see also In re Welfare of Child. of D.F.*, 752 N.W.2d 88, 98 (Minn. App. 2008) (applying harmless-error review in a juvenile-protection context); *In re Welfare of D.J.N.*, 568 N.W.2d 170, 175-76 (Minn. App. 1997) (stating that, although "[i]t was a mistake for the trial court . . . to take judicial notice

8

of the entire [previous juvenile-protection] files," because the appellant failed to show prejudice, there was no reversible error).

For the reasons detailed below, we conclude that any error in the detail of district court's findings on the four factors is harmless based on the district court's express and implicit findings along with the record evidence. Mother's petition, to which she attested under penalty of perjury, mother's testimony, and other evidence received at trial all supplement the district court's findings on the four statutory factors. And mother's brief to this court does not point to conflicting facts or record evidence that dispute the four factors, which we examine in turn.

*Factor (1):* Mother's brief to this court does not challenge the district court's finding on factor (1)—"[t]he transfer of permanent legal and physical custody of [R.T.] to [foster parent] is in the best interests of the child." Without any challenge, we need not discuss factor (1), but our focus on the child's best interests leads us to summarize the relevant findings and evidence to provide context for our discussion of the other factors.

The district court found that foster parent is "fit, willing, and suitable." Mother's petition attests that "[t]ransfer of permanent legal and physical custody best fits the needs of the child." Both mother and the GAL testified that the permanent transfer of custody to foster parent would be in R.T.'s best interests. Both mother and the GAL also detailed foster parent's relationship to R.T. and mother and foster parent's ability to meet R.T.'s needs, as foster parent had done throughout the two years that R.T. had been in her care.

*Factor (2):* Mother's brief appears to argue that the district court did not make any finding on factor (2) or that the finding it made is not sufficiently detailed. On factor (2),

9

the district court found that "[the county] made reasonable efforts to prevent or eliminate the need for removal of the child from the home and to make it possible for the child to return home or provide permanency for the child." Minnesota Statutes section 260.012(a) (2024) directs that the county's reasonable efforts "for rehabilitation and reunification are always required," except under circumstances not applicable here.

After reviewing the record, we conclude that it supports the district court's conclusion that factor (2) was satisfied. The record evidence established that mother entered into a case plan with the county. Under the case plan, mother received services related to reunification, such as assistance obtaining permanent housing, mental-health assessment and therapy, domestic-violence programming, chemical-health assessments, and sessions with a parenting-skills worker. R.T. also received services related to developmental delays and her autism diagnosis, including a structured daycare environment that promoted her development and individual therapy from an early-childhood specialist. At the district court's discretion, the county gradually increased R.T.'s visitation with mother and transitioned to unsupervised visits. But mother declined a trial home visit out of concern that it would not be in R.T.'s best interests. At the time of trial, mother had visitation with R.T. Fridays through Sundays. Based on this record, the district court's error in failing to make detailed findings on factor (2) is harmless.

*Factor (3):* Although the district court did not explicitly address factor (3) by using language from section 260C.517(a)(3)—the parent's "efforts and ability to use services to correct the conditions which led to the out-of-home placement"—the district court found that mother "acknowledged that she is not able to consistently parent [R.T.] on a full-time

10

basis, nor does she believe she will be able to do so in the reasonably foreseeable future." Mother's petition includes a similar attestation.

The record also includes substantial evidence that, despite mother's efforts to use services, conditions leading to R.T.'s out-of-home placement were not corrected at the time of trial. At trial, the county offered evidence that mother did not respond to many drug-screening requests and failed many other drug-screening tests. The record evidence also established mother's lack of follow-through on recommendations for R.T. and that this impaired mother's ability to take advantage of services to treat R.T.'s autism. A county social worker testified that, "due to [R.T.]'s set of complex needs and additional recommendations of the therapies from her autism assessment, the county had concerns for [mother]'s ability to follow through on some of those recommendations and ensure that [R.T.]'s needs were getting met through the services that were being recommended for her."

Also, R.T.'s exposure to domestic abuse while in mother's care involved R.T.'s father. A county social worker testified that father was present in mother's apartment and that twice "police had become involved with [father] at [mother]'s residence." At the time of trial, mother had not completed the domestic-abuse program to which the county had referred her. Based on this record, the district court's findings related to factor (3) are adequate and not clearly erroneous. Thus, any error in the district court's implicit determination that factor (3) was satisfied is harmless.

*Factor (4):* The district court did not expressly find factor (4)—"that the conditions which led to out-of-home placement have not been corrected so that the child can safely

11

return home." Minn. Stat. § 260C.517(a)(4). But mother's petition expressly avers that the conditions which led to the out-of-home placement "have yet to be corrected and will not be corrected in the reasonably foreseeable future." Mother's petition added that she "lacks necessary stability to provide for the day-to-day care and safety of the child." In response to the district court's question, mother's testimony affirmed her statement that the conditions leading to out-of-home placement had not been corrected. Based on this record, any error in the district court's implicit determination that factor (4) was satisfied is harmless.

In short, the record supports the district court's express and implicit findings on each of the four statutory factors. We also conclude that the district court's error in failing to make detailed findings addressing the four statutory factors is harmless. Finally, based on the record, we conclude that the district court did not abuse its discretion by transferring permanent legal and physical custody of R.T. to foster parent.

**B.     The final transfer order may include conflicting or inconsistent terms.**

We next consider mother's argument that the district court abused its discretion in the final transfer order by adopting conflicting terms. Mother emphasizes the terms of the Communication Contact Agreement, which was first incorporated by reference into the September 16 order and later referenced in the final transfer order.

We decline to consider the Communication Contact Agreement separately from the final transfer order. When the district court incorporated the Communication Contact Agreement, it merged with the final transfer order such that neither party may seek relief from the Communication Contact Agreement separately from the final order. *See In re*

*Welfare of Child of D.J.T.*, 998 N.W.2d 772, 780 (Minn. App. 2023) (determining that, upon a district court's acceptance, appellants' consents to adoption and transferred custody "effectively merged into [the court's] order . . . [and at] that point, appellants were precluded from attacking their consents to the adoption separately from the order" (citation omitted)), *rev. denied* (Minn. Dec. 29, 2023).

Mother contends that two terms in the final transfer order are in conflict. There is some merit to mother's position—at a minimum, there are terms that appear to be inconsistent. First, paragraph 3 of the final transfer order states that "[foster parent] shall hereafter have *full responsibility* for the protection, education, care, and control of the child. She shall also have *sole responsibility and discretion* for deciding whether visitation between the parents and the child shall occur, and under what circumstances or conditions." (Emphasis added.) Paragraph 5 of the final transfer order states that foster parent and mother "shall follow the Communication Contact Agreement dated September 16, 2024, that is on file with the Court." The Communication Contact Agreement includes a parenting-time schedule, provides that the schedule may be altered "at any time by mutual agreement" between mother and foster parent, and provides that "[m]ajor decisions" about R.T.'s education, mental health, and medical care will be made with discussion and "input" from mother. In short, foster parent's "full responsibility" for R.T.'s education and care and "sole responsibility and discretion" for determining visitation (paragraph 3) appear to be inconsistent with joint decision-making by mother and foster parent (paragraph 5).

This apparent inconsistency should be resolved to avoid unnecessarily complicating future potential litigation. The final transfer order, by its terms, is subject to motions for

modification under Minn. Stat. §§ 260C.519(3), .521, subd. 2 (2024). Section 260C.521, subdivision 2(a), provides that "[a]n order for a relative to have permanent legal and physical custody of a child may be modified using standards under sections 518.18 and 518.185." Section 518.18(d) allows modification only if the district court finds, in relevant part, "that a change has occurred in the circumstances of the child or the parties and that the modification is necessary to serve the best interests of the child." Minn. Stat. § 518.18(d) (2024).

In the family-law context, this court has remanded a child custody and support order for modification after determining that the order did not provide an adequate baseline for future modification motions. For example, in *Maschoff v. Leiding*, this court stated that,

> [u]nless a support order provides a baseline for future modification motions by reciting the parties' then-existing circumstances, the litigation of a later motion to modify that order becomes unnecessarily complicated because it requires the parties to litigate not only their circumstances at the time of the motion, but also their circumstances at the time of the order sought to be modified.

696 N.W.2d 834, 840 (Minn. App. 2005). Here, as in *Maschoff*, a baseline for future modification motions is, in part, determined by the terms of the final transfer order.

Mother did not raise any conflict or inconsistency in the terms of the final transfer order during district court proceedings. The district court therefore has not addressed this issue and is in the best position to determine whether there is, in fact, any conflict or inconsistency in these terms. Therefore, we remand the issue for the district court to explain or resolve the apparent inconsistency between paragraphs 3 and 5 of the final transfer order.

14

## II. Mother's ineffective-assistance-of-counsel claim fails because it is not supported by the record.

A parent has a statutory right to effective assistance of counsel "[i]n all child protection proceedings where a child risks removal from the care of the child's parent, . . . including . . . a petition for permanent out-of-home placement." Minn. Stat. § 260C.163 subd. 3(a), (c) (2024). The two-step test set out in *Strickland v. Washington* provides that, to prevail on a claim of ineffective assistance of counsel, mother must show that (1) her attorney's performance was deficient, and (2) the deficient performance prejudiced her. 466 U.S. 668, 687 (1984). Mother has the burden of proof on her ineffective-assistance claim. *Id.* This court has relied on criminal caselaw regarding ineffective-assistance-of-counsel claims—specifically, the *Strickland* analysis—when reviewing a statutory right to effective assistance of counsel in noncriminal contexts. *See, e.g.*, *Beaulieu v. Minn. Dep't of Hum. Servs.*, 798 N.W.2d 542, 550 (Minn. App. 2011) (noting that *Strickland* analysis applies in a civil-commitment context), *aff'd on other grounds*, 825 N.W.2d 716 (Minn. 2013); *In re Welfare of L.B.*, 404 N.W.2d 341, 345 (Minn. App. 1987) (applying *Strickland* in a juvenile-delinquency context).

Typically, a moving party seeking relief for ineffective assistance of counsel will request an evidentiary hearing in district court. *See, e.g.*, *Swaney v. State*, 882 N.W.2d 207, 217-18 (Minn. 2016). But appellate courts may decide an ineffective-assistance-of-counsel claim without remanding for an evidentiary hearing if the existing record is adequate.[5] *See,*

---

[5] In the postconviction context, the supreme court has explained that, "[w]hen a claim of ineffective assistance of trial counsel can be determined on the basis of the trial record, the claim must be brought on direct appeal or it is *Knaffla*-barred." *Andersen v. State*,

*e.g.*, *Torres v. State*, 688 N.W.2d 569, 572 (Minn. 2004) (considering a postconviction petition and stating that a "claim of ineffective assistance of trial counsel that can be decided on the basis of the trial court record must be brought on direct appeal"). Also, an appellate court may reject relief for ineffective assistance of counsel without an evidentiary hearing when the party seeking relief does not "allege facts which would affirmatively prove" the claim. *Fratzke v. State*, 450 N.W.2d 101, 102 (Minn. 1990) (quotation omitted).

Here, mother did not pursue any relief in district court on her ineffective-assistance claim, and she did not submit affidavits or request an evidentiary hearing. In considering mother's ineffective-assistance claim, therefore, we rely on the record underlying the final transfer order.

Under the first step of the *Strickland* test, mother must prove that her attorney's performance was deficient. *See Strickland*, 466 U.S. at 687. An attorney's representation is deficient if it "[falls] below an objective standard of reasonableness." *Id.* at 687-88. There is a strong presumption that counsel's representation was reasonable. *State v. Pearson*, 775 N.W.2d 155, 165 (Minn. 2009).

Mother contends that trial counsel's representation was deficient because her attorney failed to fully inform her that "the facts being admitted establish the statutory grounds set forth in the petition," citing Minn. R. Juv. Prot. P. 47.03, subd. 3(b), which discusses a party's required understanding when offering an admission. Mother also argues

830 N.W.2d 1, 10 (Minn. 2013). But when the claim requires examination of evidence outside the record or additional fact-finding, the claim is better brought in a postconviction proceeding. *Id.*

16

that her attorney failed "to explain the law" to mother so she would "understand" that the district court "would be required to make findings" on the statutory requirements for permanent transfer.

Mother's claim that her attorney did not inform her of the facts admitted or findings required by Minn. Stat. § 260C.517(a) is refuted by her own testimony and the petition itself. Mother testified that before she submitted the petition, she and her attorney discussed and reviewed it. And mother's verified petition attests that "[t]he conditions that led to out of home placement have yet to be corrected and will not be corrected in the reasonably foreseeable future"; "[t]ransfer of permanent legal and physical custody best fits the needs of the child"; and mother "lacks necessary stability to provide for the day-to-day care and safety of the child." Mother's petition also recommends "[t]he transfer of permanent legal and physical custody of the child to" foster parent." The first two statements directly address two of the four statutory factors. *See* Minn. Stat. § 260C.517(a)(1), (4).

Mother's testimony also acknowledged three of the four statutory factors. Among other things, mother testified that transfer of permanent custody to foster parent was in R.T.'s best interests and that foster parent was "a fit and proper person" to provide for R.T. and had been meeting "all" R.T.'s needs during the 18 months of her placement. Mother also testified and agreed that the conditions leading to R.T.'s out-of-home placement "ha[d] not been corrected and won't be corrected in the reasonably foreseeable future."

Mother appears also to be contending that she "could not have fully waived her rights to trial." On day two of her trial, mother not only submitted her petition for voluntary transfer of permanent custody but also offered testimony in support of her petition. Mother

17

expressly acknowledged the trial rights she was affirmatively waiving as well as the adequate time she had to consult with and ask questions of trial counsel. The record includes no conflicting evidence.

Based on this record, mother has failed to establish the first step of the *Strickland* test. We "need not address both the performance and prejudice prongs if one is determinative." *State v. Rhodes*, 657 N.W.2d 823, 842 (Minn. 2003). In the interest of being thorough, we consider the second step of the *Strickland* test, which requires mother to prove that her attorney's deficient performance prejudiced her. *See Strickland*, 466 U.S. at 687. She must show that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. A "reasonable probability" means "a probability sufficient to undermine confidence in the outcome" of the case. *Id*. Mother contends that she was prejudiced and did not make "an informed decision" to waive her trial rights. Mother also argues that if her attorney had fully informed her, she would have completed the trial and prevailed in regaining custody of R.T.

Mother's prejudice argument is not supported by the record. Mother's petition attested that the permanent transfer of custody to foster parent was in R.T.'s best interests and mother "lack[ed] necessary stability to provide for the day-to-day care and safety of the child." Mother offered similar testimony in support of her petition. On the second day of trial, mother did not hesitate or object to going forward, even though she had declined to settle on the first day of trial. Also, the record evidence on the first day of trial showed

that the conditions that led to R.T.'s out-of-home placement had not been corrected and would not be corrected in the foreseeable future.

Mother's prejudice argument appears to hinge on her belief that, had trial continued, she would have presented evidence that she was reunified with R.T.'s siblings, was attending appointments and therapy with R.T., and had visitation with R.T. on weekends. Each of these facts was in the record before the district court when it entered the September 16 order and the final transfer order. When accepting mother's petition for voluntary transfer, the district court stated its "concerns about whether [mother] could provide what [R.T.] needs if she was in [mother's] care a hundred percent of the time." Thus, mother's prejudice argument fails to show a reasonable probability of a different outcome. *See id.*

Mother's prejudice argument also fails to acknowledge that the voluntary transfer of custody eliminated the risk that she could be presumed to be a palpably unfit parent. *See* Minn. Stat. § 260C.301, subd. 1(b)(3) (2024) ("It is presumed that a parent is palpably unfit to be a party to the parent and child relationship upon a showing that . . . the parent's custodial rights to another child have been involuntarily transferred to a relative under a juvenile protection proceeding . . . .").

Because mother fails, on this record, to establish facts supporting either deficient performance by her attorney or that she was prejudiced by her attorney's performance, we reject mother's claim for ineffective assistance of counsel.

In sum, the district court's order transferring permanent legal and physical custody of R.T. to foster parent is affirmed in part and remanded. Upon remand, the district court must determine whether paragraph 3 and paragraph 5 of the final custody order are

19

consistent and either explain or resolve any inconsistency. Whether to reopen the record on remand is discretionary with the district court. The district court's order transferring permanent legal and physical custody of R.T. to foster parent will remain in place during remand.

**Affirmed in part and remanded.**