STATE of Minnesota, Appellant,

v.

Stanley Paul OLSON, Respondent.

No. C5-84-1105.

Supreme Court of Minnesota.

Jan. 3, 1986.

1186.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Robert M.A. Johnson, Anoka Co. Atty., Marcy C. Crain, Asst. Co. Atty., Anoka, for appellant.

C. Paul Jones, State Public Defender, Mark F. Anderson, Asst. State Public Defender, Minneapolis, for respondent.

COYNE, Justice.

This is a sentencing appeal by the state, with our permission, from that part of the decision of the court of appeals in *State v. Olson*, 361 N.W.2d 899 (Minn.App.1985), reducing defendant's sentence from 73 months to 61 months.[1] We reinstate the original sentence.

A district court jury convicted defendant of receiving stolen property valued at $1,000 or more, a violation of Minn.Stat. § 609.53, subd. 1 (1984):

Subdivision 1. Penalty. Any person who receives, possesses, transfers, buys or conceals any stolen property or property obtained by robbery, knowing or having reason to know the property was stolen or obtained by robbery, may be sentenced as follows:

(1) If the value of the property is $1,000 or more, to imprisonment for not more than ten years or to payment of a fine of not more than $20,000, or both;

(2) If the value of the property is less than $1,000, but more than $300, to imprisonment for not more than five years or to payment of a fine of not more than $10,000, or both;

(3) If the value of the property is $300 or less, to imprisonment for not more than 90 days or to payment of a fine of not less than $700, or both;

---

1. We denied the petition of defendant for review of that part of the decision affirming his conviction.

(4) Notwithstanding the value of the property, if the property is a firearm, to imprisonment for not more than five years or to payment of a fine of not more than $10,000, or both.

For sentencing purposes, the Sentencing Guidelines deal with violations of section 609.53, subd. 1(1) at two different severity levels: if the value of the property was more than $2,500 at the time of the crime, the offense is classified as a severity level VI offense; if the stolen property was worth at least $1,000 but not more than $2,500, the offense is listed at severity level V. In this case the maximum presumptive sentence to which the defendant, who had a criminal history score of more than six and also a custody status point, was subject was either 73 months or 61 months, depending on whether sentence was imposed according to offense severity level VI or V.[2] At the time of sentencing defendant's counsel argued that it was unfair to penalize the defendant more severely on the ground that the value of the stolen property exceeded $2,500 because the jury found only that he was guilty of receiving stolen property valued at $1,000 or more. There had been no request for a special interrogatory requiring the jury to determine whether or not the value of the stolen car was more than $2,500. Defendant's counsel had, however, declined the offer of a sentencing hearing on the value of the stolen car, conceding that a hearing was pointless because the evidence would be that the value of the car was well over $2,500. The trial court determined that the value of the stolen property exceeded $2,500 and imposed the 73-month sentence.

Stating that a defendant has no duty to request an additional interrogatory that might result in the imposition of a longer sentence, the court of appeals reduced the sentence from 73 to 61 months because of the trial court's failure to submit to the jury, sua sponte, the question whether or not the property was worth more than $2,500. The court of appeals declared that it was the state's duty to request such an interrogatory and that in the absence of a jury determination that the value of the stolen property exceeded $2,500, the trial court's determination of value for sentencing purposes constituted a violation of constitutional guarantees against double jeopardy.

■ There is, however, no double jeopardy issue involved here. We start with the general rule that it is the jury's function to decide whether the defendant is guilty or not guilty of the crime charged and that it is the trial court's function to make any findings of fact bearing on the sentence to be imposed for the offense of which the defendant is found guilty. The statute, not the sentencing guidelines, describes the crime. Section 609.53, the statute making the receipt of stolen property a crime, divides the offense into three categories based on the value of the stolen property and sets out the maximum sentence applicable to each category. The legislature clearly contemplated that the jury would determine the value of the property within this classification scheme[3], and so it did. The jury found the defendant guilty of receiving stolen property having a value of $1,000 or more.

The statutory sentence provided for the offense determined by the jury reposes broad discretion in the trial court—imprisonment for not more than ten years or a fine of not more than $20,000, or both. It is no doubt fair to say that the length of the sentence meted out in the exercise of that discretion has traditionally depended, at least in part, on the value of the stolen property. The discretion accorded the trial court by the statute has, however, been greatly circumscribed by the sentencing

---

**2.** These durations are 3 months more than the maximum durations shown on the grid because Minnesota Sentencing Guidelines and Commentary II.B.2. (1984) increases the presumptive sentence duration by 3 months when the defendant has a custody status point and the crim-

inal history score without that point is six or more. Defendant's criminal history score without the custody status point was fourteen.

**3.** *See* Advisory Committee Comment to Minn. Stat.Ann. § 609.52, subd. 3 (West 1964).

guidelines. Embodying the principle that a rational and consistent sentencing policy requires that the severity of sanctions increase in direct proportion to increases in the severity of criminal offenses and the severity of criminal histories of convicted felons, the sentencing guidelines incorporate a recognition that the seriousness of the conduct underlying theft, forgery, and related crimes depends on the value of the property involved—ranking receiving stolen property as a severity level VI offense if the property value exceeds $2,500 and as a severity level V offense if the property is worth from $1,000 to $2,500.

Consistent with the rule that it is the trial court's function to make any findings of fact bearing on sentencing, we have held that it is for the trial court to resolve factual disputes bearing on the exercise of its discretion to depart from the presumptive sentence in appropriate cases. *State v. Winchell*, 363 N.W.2d 747 (Minn.1985).[4] Also consistent with the general rule, we have held that it is the trial court's role to resolve any factual dispute bearing on the defendant's criminal history score. *State v. McAdoo*, 330 N.W.2d 104 (Minn.1983). When the trial court sentenced the defendant pursuant to severity level VI, it did not in effect try the defendant a second time and find him guilty of a more serious offense. The trial court simply took cognizance of a fact bearing on the ranking of the offense of conviction for sentencing purposes. Defendant still stands convicted only of the offense of receiving stolen property valued at $1,000 or more.

Neither can we perceive any reason to depart from application of the customary principles of waiver and forfeiture. The argument that one can never waive the right to challenge excessive punishment is misplaced. We are not dealing here with the right to challenge excessive punishment but with the opportunity to have the jury rather than the trial court decide certain facts bearing only on the sentence.[5] Furthermore, the evidence in this case was such that the defendant could not have been prejudiced by the failure to ask the jury whether or not the stolen car was worth more than $2,500. The owner of the car testified that when it was stolen on June 22, 1983, his 1982 model Pontiac was worth $5,500—the N.A.D.A. book value and the amount his insurer would pay. The defendant made no attempt to dispute this valuation and, in rejecting a sentencing hearing on value, tacitly conceded its correctness.

It may be that in an appropriate case involving an offense under section 609.53 the trial court should, on the request of either the defendant or the state, submit a special interrogatory inquiring whether or not the value of the stolen property exceeded $2,500.[6] This, however, is not

---

4. Specifically, we held that, when deciding whether or not to depart from the presumptive sentence, a trial court is not bound to accept the defendant's version of the crime according to the defendant's testimony at his guilty plea hearing.

   More recently, in *State v. Montjoy*, 366 N.W.2d 103 (Minn.1985), we held that even though the defendant was charged with two counts of aggravated robbery—one involving the use of a dangerous weapon and the other the infliction of bodily harm—the trial court did not err in refusing to submit a special verdict form asking whether or not a dangerous weapon was used, and was correct in applying the longer minimum sentence provisions of Minn. Stat. § 609.11, subd. 5 (1984) based on the evidence that a firearm was used.

5. The situation must be distinguished from that presented by *State v. Cromey*, 348 N.W.2d 759 (Minn.1984). Cromey was tried on separate counts of second degree intentional murder and second degree felony murder. Because both offenses were then ranked as severity level X offenses, the trial court submitted only a general verdict and the jury found the defendant guilty simply of second degree murder. Later, when felony murder was retroactively reclassified as a level IX offense, we reduced the sentence because it was impossible to tell from the verdict which of the two crimes the jury found the defendant had committed and the defendant's failure to object to the submission of the general verdict was excusable because the basis for conviction of second degree murder made no difference in the sentence.

6. Ordinarily, in criminal cases a jury returns only a general verdict of guilty or not guilty of the crime charged, and the use of special interrogatories or special verdicts would, as the dissent points out, "be a radical departure from the

such a case. By failing to request a special interrogatory, the defendant has waived his right to complain that such an interrogatory was not submitted to the jury, and in any event nothing in the evidence required its submission. Accordingly, we reverse the reduction of defendant's sentence by the court of appeals and reinstate the original sentence imposed by the trial court.

Reversed in part; original sentence reinstated.

AMDAHL, C.J., and SCOTT and YETKA, JJ., concur.

SCOTT, Justice (concurring in the judgment only).

Although I agree with the majority's final disposition of this case, I disagree with its assertion that "in an appropriate case * * * the trial court should * * * submit a special interrogatory inquiring whether or not the value of the stolen property exceeded $2,500." *Majority,* at 527. The courts of this state have never adopted the use of special interrogatories in criminal cases and I believe that, for the reasons set out below, it would be improper for this court to adopt such a rule in this case.

A special interrogatory is improper in this particular case because the factual determination here involves a question of sentencing. It is the law of this state, which the majority recognizes, that "it is the jury's function to decide whether the defendant is guilty or not guilty of the crime charged and that it is the trial court's function to make any findings of fact bearing on the sentence to be imposed for the offense of which the defendant is found guilty." *Majority,* at 526–527. This rule has been recognized by the American Bar Association in promulgating its Standards for Criminal Justice:

Sentencing involves a judicial function, and the jury's role should not therefore extend to the determination of the appropriate sentence.

III ABA Standards for Criminal Justice, Standard 18–1.1 (1980). I find it inconsistent that the majority would recognize this rule and yet still be willing to allow special interrogatories to be submitted on sentencing questions "in appropriate cases." To establish such a rule impedes the trial court's function of "mak[ing] any findings of fact bearing on the sentence to be imposed," and significantly alters the law of this state.

A more compelling reason for not allowing special interrogatories to be submitted in criminal cases is that such a rule would be a radical departure from the established practice in criminal cases in this state. It is the sole function of the jury to determine guilt or innocence on the specific counts submitted to it. Allowing special interrogatories to be submitted in criminal cases would cause problems that are faced in civil jury verdicts to arise in criminal cases. One such problem is an inconsistent verdict, where the jury's answers to the spe-

established practice in criminal cases in this state." By its terms, however, Minn.Stat. § 609.53 (1984) forces the jury to answer questions on the value of the stolen property. The section first sets out the definition of the crime and then requires a value determination in order to set the maximum sentence. The jury is the finder of fact with regard to this value. *See* Minn.Stat.Ann. § 609.52 comment on subd. 3 (West 1964). The verdict form used in this case followed this format. First, the jury was to decide guilt or innocence and then, if the verdict was guilty, the jury was instructed to answer "yes" to one of three questions: Was the value of the property $1,000 or more? Less than $1,000 but more than $300? $300 or less? Inasmuch as the jury was required to make this

determination, the addition of a fourth question, or a subpart to the first question, asking whether or not the value of the stolen property exceeded $2,500 would not seem a "radical departure" from established practice when the charge is receiving stolen property. In such a case, any attempt to instruct the jury to apply the beyond-a-reasonable-doubt standard in determining whether or not the defendant was guilty of receiving stolen property valued at $1,000 or more and a different standard in determining if the property was worth more than $2,500 could only confuse the jury. Thus, although technically the fair-preponderance-of-the-evidence standard should apply to the latter determination, the trial court should not so instruct the jury.

cial interrogatories cannot be reconciled with its final verdict. While such inconsistencies can be tolerated in civil cases, they cannot be tolerated in a criminal case dealing with the guilt or innocence of an individual. This state has avoided such problems by not allowing special interrogatories to be submitted in a criminal trial.

Even if special verdicts were allowed in criminal cases, it would be unwise for this court to establish such a practice in a judicial opinion where the precise boundaries of their use cannot be adequately prescribed. The majority attempts to bound the use of special interrogatories by allowing them to be used only in the "appropriate case" and under a certain procedure. Such boundaries, however, are in essence "boundless" because they give inadequate guidance to courts and counsel concerning the use of special interrogatories. The "appropriate case" is undefined and is therefore an inadequate standard for criminal cases. It also conflicts with the intentional specificity of the Rules of Criminal Procedure adopted in Minnesota.

A more prudent approach for this court to adopt would be to defer judgment on the use of special interrogatories in this case and refer the issue to the Supreme Court Advisory Committee on Rules of Criminal Procedure. The committee can then fully consider the issue, determine whether special interrogatories should be used in criminal cases, and establish more precise guidelines for their use. In this way, the court can keep the rules of criminal procedure precise and specific and thereby protect both the accused and the community in a criminal trial.

AMDAHL, Chief Justice.

I join in the special concurrence of Justice Scott.

YETKA, Justice.

I join in the special concurrence of Justice Scott.