**STATE of Minnesota, Respondent,**

v.

**Richard Raymond CHAUVIN,
Appellant.**

No. A05–726.

Supreme Court of Minnesota.

Oct. 26, 2006.

Mike Hatch, Attorney General, Thomas R Ragatz, Assistant Attorney General, Saint Paul, MN, Jan Kolb, Mille Lacs County Attorney, Milaca, MN, For Respondent.

Benjamin J. Butler, Assistant State Public Defender, Office of the Minnesota State Public Defender, Minneapolis, MN, For Appellant.

## OPINION

HANSON, Justice.

On appeal from his conviction for felony theft by swindle, appellant Richard Raymond Chauvin challenges the district court's double upward durational departure from the presumptive guideline sentence. Specifically, Chauvin argues that the district court did not have the authority to impanel a jury to make findings on aggravating sentencing factors. Chauvin also challenges the upward departure because it was based on an aggravating factor that did not appear in the complaint. We affirm.

On March 19, 2004, Chauvin waved down a car and asked the driver, 80–year-old D.E., for $200 to help Chauvin get his truck out of a ditch. D.E. was uneasy about the request but agreed because Chauvin knew D.E.'s full name and said that Chauvin sang at a church D.E. occasionally attended. D.E. gave Chauvin the money and a ride after Chauvin promised to pay him back. At one point before the two parted company Chauvin showed D.E. his driver's license, told him his real name, and signed an agreement to return the money. D.E. gave Chauvin another $450 when he returned to D.E.'s home a few hours later and asked for more money to get his truck fixed. The next day someone purporting to be a police officer phoned D.E.'s home and told D.E.'s daughter that Chauvin needed more help and asked that D.E. bring an additional $600. D.E.'s daughter became suspicious and called the police, who identified and arrested Chauvin.

On April 28, 2004, Chauvin was charged by complaint with felony theft by swindle, Minn.Stat. § 609.52, subds. 2(4), 3(3)(a) (2004), and driving after revocation, Minn. Stat. § 171.24, subd. 2 (2004). The complaint was silent about aggravating factors. The presumptive guideline sentence based on the theft charge and Chauvin's criminal history was 24 months commitment to prison.

On June 24, 2004, the United States Supreme Court decided *Blakely v. Washington*, holding that for *Apprendi* purposes, the "statutory maximum" is "the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." *Blakely v. Washington*, 542 U.S. 296, 303, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). In October 2004, about three weeks before trial, the state filed and served on Chauvin a written notice that it would seek an enhanced sentence under Minn.Stat. § 609.1095, subd. 4 (2004) (amended June 2, 2005, eff. Aug. 1, 2005) (five or more prior felonies ("career offender")), and Minn. Sent. Guidelines II. D.2b.(1) (particularly vulnerable victim). The state sought to enhance Chauvin's sentence from 24 months to 60 months, the maximum sentence allowed by Minn.Stat. § 609.1095, subd. 4. The state did not amend its complaint to reflect these aggravating factors.

On the first day of trial the district court told Chauvin and the attorneys that, because the career offender statute requires proof of prior crimes and *Blakely* requires

that the aggravating sentencing factors be found by a jury, it was the court's intention to bifurcate the proceedings by first asking the jury to determine guilt, and then reconvening the jury to hear evidence on and make findings about the existence of the sentencing factors. Outside the presence of the jury the court explained how the bifurcated process would work and told Chauvin that he could waive his right to a jury determination on the sentencing factors if he wished. Chauvin said he did not wish to waive his right to a jury determination on the sentencing factors but objected to any proceeding that would result in a departure from the presumptive sentence of 24 months because there were no rules or statutes authorizing the procedure that the court was contemplating.

After a two-day trial the jury returned a verdict of guilty. The district court then told the jury they could go home, but that they were bound by the same rules as during trial because they would have to return the next day for a "second stage to this trial." After extensive arguments on the state's ability to prove the dates of Chauvin's prior convictions, the state withdrew its motion for an upward departure based on the career offender statute, Minn.Stat. § 609.1095, subd. 4. The court then reconvened the jury for a finding on the other aggravating factor (victim vulnerability), and instructed them as follows:

A separate jury determination is required when a defendant has been found guilty of a crime and the state seeks an increase in the defendant's sentence above the presumptive sentence provided by law. In making that determination the trial jury shall consider those factors relevant to the question of the increased sentence. If you unanimously find beyond a reasonable doubt that one of the following relevant factors exists then the judge may increase the defendant's sentence above the presumptive

sentence provided by law. Final determination whether to increase the defendant's sentence remains with the judge.

The court instructed the jury on the state's burden of proof, beyond a reasonable doubt, and on the two elements of a vulnerable victim. The court then said:

If you find that both these elements have been proved beyond a reasonable doubt, then the [victims] were vulnerable adults and you should * * * answer the special interrogatory yes. If you find that either [element] has not been proved beyond a reasonable doubt, the [victims] were not vulnerable adults then you should answer the special interrogatory no.

The attorneys argued to the jury about the sentencing factor based on the evidence presented in the first phase of trial. No new evidence was presented at this sentencing stage. After deliberations the jury returned the interrogatory, finding that "the evidence establishes beyond a reasonable doubt that the defendant's victims * * * were vulnerable adults." Based on this jury finding the court sentenced Chauvin to 48 months in prison, double the presumptive sentence. The court of appeals affirmed. *State v. Chauvin*, No. A05–726, 2005 WL 2979382, at *1 (Minn. App. Nov.8, 2005).

## I.

 We first address the issue of whether in November of 2004 the district court had the inherent judicial authority to impanel a sentencing jury. This is an issue of law that we review de novo. *See State v. Pflepsen*, 590 N.W.2d 759, 763 (Minn.1999). At the time of Chauvin's trial and sentencing hearing, the legislature had not yet enacted legislation to specifically authorize the use of juries on sentencing and we had not spoken on the

issue of the inherent power of the district court to do so.

■ A court's inherent judicial authority "grows out of express and implied constitutional provisions mandating a separation of powers and a viable judicial branch of government." *In re Clerk of Lyon County Courts' Compensation*, 308 Minn. 172, 180, 241 N.W.2d 781, 786 (1976). This authority only extends to a court's "unique judicial functions." *State v. C.A.*, 304 N.W.2d 353, 358–59 (Minn.1981). In Lyon County we identified several guiding principles for analyzing the scope of a district court's inherent judicial authority and concluded:

> The test to be applied in these cases is whether the relief requested by the court or aggrieved party is necessary to the performance of the judicial function as contemplated in our state constitution. The test is not relative needs or judicial wants, but practical necessity in performing the judicial function. The test must be applied with due consideration for equally important executive and legislative functions.

*Lyon County*, 308 Minn. at 181–82, 241 N.W.2d at 786. In other words, a court has inherent judicial authority to engage in activities that are (1) necessary (2) to achieve a unique judicial function (3) without infringing on equally important legislative or executive functions. Applying this test to the facts of this case leads us to conclude that the district court had the inherent judicial authority to impanel a sentencing jury.

First, use of a sentencing jury was necessary because, as the district court correctly determined, the judicial fact finding portion of the Minnesota Sentencing Guidelines was unconstitutional under *Blakely*. We later confirmed that determination. *See State v. Shattuck* (*Shattuck II* ), 704 N.W.2d 131, 143 (Minn.2005). In *Shattuck II* we held that because "Minn.

Sent. Guidelines II.D authorize[s] the district court to make * * * an unconstitutional upward durational departure upon finding an aggravating factor without the aid of a jury, we hold that * * * section II.D of the guidelines is unconstitutional as applied." 704 N.W.2d at 142. Without a constitutional mechanism for imposing an upward sentencing departure and without legislative guidance on how to proceed, impaneling a sentencing jury was necessary (1) to carry out the legislative sentencing scheme to the extent that it contemplated that the district court would impose upward departures where such departures were "more appropriate, reasonable, or equitable than the presumptive sentence," *see* Minn. Sent. Guidelines II.D, 14 Minn.Stat. 347–48 (2004), and (2) to vindicate Chauvin's Sixth Amendment right to a jury determination of aggravating sentencing factors, *see Blakely*, 542 U.S. at 303–04, 124 S.Ct. 2531.

Chauvin argues that the court's sentencing jury procedure was not necessary because the district court had a constitutional mechanism to sentence him, by imposition of the presumptive sentence. But this argument requires a conclusion that necessity, in the context of inherent judicial authority, is the equivalent of impossibility. We have never given necessity such a limited interpretation.

In *In re Office of District Public Defender for the First Judicial District*, 373 N.W.2d 772, 775, 775 n. 1 (Minn.1985), we rejected the argument that the First Judicial District had the inherent authority to withdraw itself from the public defender system because the proffered reason for withdrawal—disapproval of the appointed public defender—was based on "relative needs or judicial wants," not "practical necessity." In *State by Archabal v. County of Hennepin*, 505 N.W.2d 294, 298 (Minn. 1993), we held that ordering a closed set-

tlement conference between two public entities was within the court's inherent judicial power and thus could be exercised notwithstanding the Open Meeting Law. These cases recognized that necessity, for purposes of inherent judicial authority, involves a reasonableness inquiry.

Without a constitutional statutory mechanism to impose an aggravated sentence the district court was left with two choices. It could completely ignore the legislative scheme for departing from the presumptive guideline sentence. Or, as the court ultimately chose, it could do the least amount of damage to the statutory scheme by retaining the departure mechanism while at the same time complying with *Blakely* by using a sentencing jury. Faced with this conflict, we agree that it was practically necessary for the district court to improvise a jury fact finding mechanism to comply with the Sixth Amendment.

Second, using a sentencing jury to make factual findings is a unique judicial function. The state relies on our decision in *State v. Johnson*, 514 N.W.2d 551 (Minn. 1994), to argue that impaneling a sentencing jury is a unique judicial function because it is a procedural matter. In *Johnson* we were asked to enforce a court rule, Minn. R.Crim. P. 23.04, which required the defendant's consent before a misdemeanor could be certified as a petty misdemeanor, over a contrary statute, Minn.Stat. § 609.131, subd. 1 (2004), which did not. *Johnson*, 514 N.W.2d at 554. Enforcing the court rule would have given the defendant the option of electing a jury trial, whereas the statute would have left this determination to the discretion of the prosecutor. *Id.* at 553.

We said that the "[d]etermination of [court] procedural matters is a judicial function" that "arises from the court's inherent judicial powers." *Id.* at 553–54;

*see also In re Welfare of J.R., Jr.*, 655 N.W.2d 1, 3 (Minn.2003) ("We have consistently held that the supreme court has the primary responsibility under the separation of powers doctrine to regulate matters of trial and appellate procedure."). We then defined a procedural rule as one that " 'regulate[s] the steps by which the guilt or innocence of one who is accused of a criminal statute is determined' ", *Johnson*, 514 N.W.2d at 554 (quoting *State v. Wingo*, 266 N.W.2d 508, 513 (Minn.1978)), or that " 'neither creates a new cause of action nor deprives defendant of any defense on the merits,' " *id.* at 555 (quoting *Strauch v. Superior Court*, 107 Cal.App.3d 45, 165 Cal.Rptr. 552, 554 (1980)), or that " 'prescribes [the] method of enforcing * * * rights or obtaining redress for their invasion,' " *id.* at 554 (first alteration in original) (quoting *Stern v. Dill*, 442 N.W.2d 322, 324 (Minn.1989)). Conversely, we defined a substantive rule as one that " 'declare[s] what acts are crimes and prescribe[s] punishment for their violation,' " *id.* at 554 (quoting *Wingo*, 266 N.W.2d at 513), or that " 'creates, defines and regulates rights,' " *id.* (quoting *Stern*, 442 N.W.2d at 324). We concluded that the certification process is a procedural rule because it did not change any elements of a substantive offense or create a new class of offenses, but instead described the steps to take in determining whether an existing offense will be treated as a different existing offense. *Id.* at 555.

Similarly, impaneling a sentencing jury did not change the punishment available for the underlying substantive offense. It merely changed the steps that the court took in arriving at a sentence already authorized by the legislature. *Blakely* did not remove the ability of a judge to impose an aggravated sentence, it only changed the process by which aggravated sentences may be imposed.

Furthermore, safeguarding the rights of criminal defendants is a historical and constitutional function of the judicial branch. *Cf. State v. Scales*, 518 N.W.2d 587, 592 (Minn.1994) (exercising our supervisory powers to require the recording of custodial interrogations in order to afford " 'adequate protection of the accused's right to counsel, his right against self incrimination and, ultimately, his right to a fair trial,") (quoting *Stephan v. State*, 711 P.2d 1156, 1159–60 (Alaska 1985)); *State v. Paulick*, 277 Minn. 140, 150, 151 N.W.2d 591, 598 (1967) (holding that the authority to grant or refuse the request of law-enforcement officers to initiate criminal procedures is a function that the judiciary cannot delegate). We have recognized this function as applied to the Sixth Amendment right to a trial by jury in two cases involving factual findings that had an impact on sentencing issues, but where there was no legislation specifying the identity of the fact finder. *See State v. Robinson*, 480 N.W.2d 644 (Minn.1992); *State v. Olson*, 379 N.W.2d 524 (Minn.1986).

The defendant in *State v. Olson* was convicted of receiving stolen property valued at $1,000 or more, the highest category of offenses listed in the relevant statute. 379 N.W.2d 524, 525 (Minn.1986). For purposes of determining the offense severity level, the sentencing guidelines further distinguished between receiving stolen property valued at more than $2,500 and receiving stolen property valued between $1,000 and $2,500. *Id.* at 526. The district court made a factual finding that the property involved was worth more than $2,500, and thus sentenced the defendant according to the higher offense severity level. *Id.* We held that judicial fact finding of sentencing factors did not violate double jeopardy and that, in any case, the defendant waived the argument by failing to request a special interrogatory verdict. *Id.* at 526, 528. But we stated that "[i]t may be that in an appropriate case involving an offense under section 609.53 the trial court should, on the request of either the defendant or the state, submit a special interrogatory inquiring whether or not the value of the stolen property exceeded $2,500." [1] *Id.* at 527.

In *State v. Robinson* the district court submitted a special interrogatory to the jury to make a finding, in addition to guilt, on the question of whether some of the defendant's acts of sexual abuse occurred after a certain date.[2] 480 N.W.2d 644, 645 (Minn.1992). We reversed the resulting enhanced sentence because the district court improperly instructed the jury on the burden of proof in finding this fact. *Id.* at 646. But we also commented on the second issue presented in the case: whether the judge would have been bound by the jury's finding in the special interrogatory or whether the finding was merely advisory. *Id.* We said, "[i]n our view defendant had a right to let the jury authoritatively decide the issue of whether the abuse occurred before or after the effective date of the repeat offender statute." *Id.*

These cases demonstrate our recognition of the historical and constitutional function of the judiciary to safeguard the rights of criminal defendants by providing for a jury trial where the statutory scheme is silent

---

1. We did not explain what an appropriate case may be, but hinted that the defendant would have to request the interrogatory and that there must be some degree of uncertainty as to the value of the property. *Olson*, 379 N.W.2d at 527–28.

2. This date was important because it was the effective date of a mandatory minimum statute, which would have applied to the defendant if the offense was committed after the effective date, but not before. *Robinson*, 480 N.W.2d at 644–45.

on the issue. Impaneling a sentencing jury is thus a unique judicial function.

Third, the district court did not infringe on the legislative function of creating a sentencing guideline system. At the time the district court impaneled the sentencing jury, *Blakely* had established that the judicial fact finding on sentencing factors contemplated by the guidelines was unconstitutional, and there was no new legislation providing for the same or a different procedure. Far from infringing on a legislative function, the district court was effectuating the legislative policy of allowing the opportunity to depart from the presumptive sentence where "substantial and compelling circumstances exist." Minn. Sent. Guidelines I.4, II.D. Accordingly, we hold that the district court had inherent power to impanel a sentencing jury under these facts. This result comports with results reached in other jurisdictions. *See, e.g., State v. Schofield,* 895 A.2d 927, 937–38 (Me.2005) (noting that permitting jury sentencing pursuant to the court's power to " 'safeguard and protect * * * the fundamental principles of government vouchsafed to us by the State and Federal Constitutions' " "best preserves the Legislature's intent to provide greater punishment for those who commit the most heinous offenses" (quoting *Morris v. Goss,* 147 Me. 89, 83 A.2d 556, 565 (1951)); *Aragon v. Wilkinson ex rel. County of Maricopa,* 209 Ariz. 61, 97 P.3d 886, 891 (2004); *Lopez v. People,* 113 P.3d 713, 716 (Colo. 2005), *cert. denied,* —— U.S. ——, 126 S.Ct. 654, 163 L.Ed.2d 529 (2005).

## II.

■ Chauvin argues that the recognition of the inherent power of the district court to impanel a sentencing jury is inconsistent with and contrary to our recent decisions in *Shattuck II,* 704 N.W.2d 131,

and *State v. Barker,* 705 N.W.2d 768 (Minn.2005).

In *State v. Shattuck (Shattuck I )*, 689 N.W.2d 785, 786 (Minn.2004), we first addressed the effect of the *Blakely* decision on the Minnesota Sentencing Guidelines and held that "because imposition of the presumptive sentence is mandatory absent judicial findings * * * the presumptive sentence is the maximum penalty authorized solely by the jury's verdict for purposes of *Apprendi.*" In *Shattuck II* we addressed the appropriate remedy on remand, first holding that although "Minnesota Sentencing Guidelines II.D is unconstitutional insofar as it permits an upward durational departure based on judicial findings," this portion can be excised and severed from the remaining constitutional provisions of the guidelines. 704 N.W.2d. at 143–44. After declining to adopt the *Booker*[3] remedy by modifying the guidelines to make them advisory, we addressed the question of "whether this court has the inherent authority to authorize the use of sentencing juries and a bifurcated trial process." *Shattuck II,* 704 N.W.2d at 147. Chauvin relies heavily on the last paragraph of this portion of the decision, where we said:

> While this court has the authority to establish procedures to apply the requirements of *Apprendi* and *Blakely* to sentencing in Minnesota, we leave to the legislature the task of deciding how the Sentencing Guidelines system should be altered to comport with those cases. It is the legislature that created the Sentencing Guidelines system and retains authority over its development. For us to engraft sentencing-jury or bifurcated-trial requirements onto the Sentencing Guidelines and sentencing statutes would require rewriting them, some-

3. *United States v. Booker,* 543 U.S. 220, 245, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005).

thing our severance jurisprudence does not permit. *Id.* at 148. We then remanded for resentencing, but noted that we were not foreclosing the district court from using the remedy that the state requested—impaneling a sentencing jury on remand—because the legislature had recently authorized it. *Id.* at 148 & n. 17 (citing Act of June 2, 2005, ch. 136, art. 16, §§ 3–6, 2005 Minn. Laws 901, 1115–16).

After reversing the defendant's *Blakely*-infirm sentence in *Barker*, we rejected the state's argument that we should direct the district court to impanel a sentencing jury on remand. *Barker*, 705 N.W.2d at 776. We first noted that "[i]n *Shattuck*, we rejected the suggestion that the district court should use its inherent power to impanel a resentencing jury." *Barker*, 705 N.W.2d at 775. We then recognized that numerous mandatory minimum statutes were amended by the 2005 legislative response to *Blakely*, but that the statute Barker was sentenced under, Minn.Stat. § 609.11, subds. 5(a), 7 (2004) (amended June 1, 2006, eff. Aug. 1, 2006), was not similarly amended. *Barker*, 705 N.W.2d at 776. We concluded that this indicated a legislative intent that sentencing juries not be available to implement this mandatory minimum sentence in a resentencing hearing on remand, and we directed the district court to impose a sentence within the presumptive guideline range. *Id.*

The policy decision underlying *Shattuck II* and *Barker*, to decline on comity grounds to exercise our inherent judicial authority to impanel sentencing juries, could be extended to cases such as Chauvin's, where the district court exercised its inherent authority to impanel a sentencing jury before *Shattuck II* was decided and before the 2005 legislation was enacted. But, ultimately, we conclude that *Shattuck II* and *Barker* do not control the resolution of this case because the issue we faced in those cases was different from the precise issue we face here in ways that alter the comity analysis that is reflected in those cases.

The defendants in *Shattuck II* and *Barker* were sentenced before *Blakely* was decided and were not afforded a jury determination on aggravating factors. Chauvin was sentenced after *Blakely* was decided and was given a jury trial on the aggravating factor. More important, the state in *Shattuck II* and *Barker* was asking us to recognize the district court's inherent judicial authority to impanel a sentencing jury on remand of an unconstitutional sentence, and we made the policy decision to not recognize that authority after the legislature had already authorized the use of juries on resentencing. In *Shattuck II* the legislature had already provided for the remedy the state was requesting. In *Barker* the legislature had already omitted the specific mandatory minimum statute at issue from the authorization to use sentencing juries on resentencing. In both cases we acknowledged the existence of the inherent judicial authority to impanel a sentencing jury, but made a policy decision out of deference to the legislature to not exercise that power.[4]

Chauvin essentially asks us to give retroactive effect to the policy decision we made in *Shattuck II* and to expand it to situations where the legislature was yet silent about its intent. At the time Chau-

---

4. This is not the first time that the legislature has taken a position on a matter within the inherent power of the judiciary that this court nonetheless decided to enforce as a matter of comity. *See, e.g., State v. Willis,* 332 N.W.2d 180, 184 (Minn.1983) (enforcing a statute that allowed the admission of certain evidence where there was no court evidentiary rule to the contrary).

vin was sentenced there was no lawful legislative fact finding procedure to which the court could have given deference. Thus, the policy decision on inherent authority faced by the district court in this case was significantly different than the decision we faced in *Shattuck II* and *Barker.*

Moreover, we concluded in *Hankerson v. State,* 723 N.W.2d 232 at 240–241, 243, 2006 WL 3026144 (Minn.2006), filed simultaneously with this opinion, that the retroactivity aspects of the 2005 amendments to Minn.Stat. § 244.10 (2004 & Supp.2005), authorizing the use of juries on resentencing in cases where the original sentence was imposed before enactment of that legislation, was constitutional. That decision has practical ramifications on the comity analysis that must be made to determine whether we should reverse the district court's exercise of its inherent judicial authority in this case. If we were to extend the policy choices made in *Shattuck II* and *Barker* to Chauvin—to invalidate the district court's use of a sentencing jury in original sentencing—we would necessarily remand the case to the district court for resentencing, which would trigger the authorization to impanel a jury under section 244.10. We do not agree with the state that the availability of a sentencing jury on remand for resentencing would make any error in the previous use of a sentencing jury harmless, because there is no assurance that the two juries would necessarily reach the same result. But, the availability of a sentencing jury for resentencing on remand does alter the policy factors that influenced our decisions in *Shattuck II* and *Barker.* We now know that the retroactivity aspects of the amendments to section 244.10 are constitutional, a matter we left open in *Shattuck II.* We also conclude that the procedures utilized by the district court here are in material compliance with the procedures later authorized by section 244.10 for resentencing. Thus, unlike in *Shattuck II* and *Barker,* we are faced with the prospect of requiring the district court to repeat the very procedures it has already followed. Because this would offend notions of judicial economy, and because the procedures used by the district court were consistent with those later specified by the legislature, principles of comity no longer discourage the use of inherent judicial authority.

Therefore, we hold that the district court's exercise of its inherent authority to impanel a jury on sentencing factors was not precluded by *Shattuck II* or *Barker* or by reasons of comity to the legislature.

### III.

We now turn to Chauvin's argument that because the Supreme Court in *Apprendi v. New Jersey,* 530 U.S. 466, 494 & n. 19, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), compared an aggravating factor to an element of a greater offense, all aggravating factors must appear in the complaint. Chauvin argues that the state's failure to include victim vulnerability in the complaint violates his Sixth Amendment right to notice of the nature and cause of the accusation against him and his Fourteenth Amendment right to due process.

### A.

■ The Sixth and Fourteenth Amendments require that the state inform a defendant "of the nature and cause of the accusation." U.S. Const. amends. VI, XIV; *Faretta v. California,* 422 U.S. 806, 818, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). This "nature and cause" requirement is satisfied if the charging instrument " 'contains such descriptions of the offense charged as will enable him to make his defense and to plead the judgment in bar of any further prosecution for the same

crime.'" *State v. Becker*, 351 N.W.2d 923, 926 (Minn.1984) (quoting *Rosen v. United States*, 161 U.S. 29, 34, 16 S.Ct. 434, 40 L.Ed. 606 (1896)).

For the proposition that all elements must appear in the complaint Chauvin relies on our decision in *State v. Gisege*, 561 N.W.2d 152, 156–59 (Minn.1997). In *Gisege* the defendant was on trial for murder, and the district court granted his motion to instruct the jury on what the defendant characterized as the lesser-included offense of first-degree assault. *Id.* at 155. After concluding that assault is not a lesser-included offense of murder, we held that the district court erred in giving the instruction because assault was not listed on the complaint. *Id.* at 156–57. But *Gisege* is distinguishable because it only requires that separate *offenses* appear in the charging instrument. *See id.* at 157. We discussed the use of elements only to identify separate offenses, not to require the presence of aggravating sentencing factors in the complaint. *See id.* at 156–57.

■ In *McCollum v. State*, we rejected the argument that due process requires a reference to the sentencing statute in the charging instrument. 640 N.W.2d 610, 617–19 (Minn.2002). We explained that the purpose of the notice requirement is to allow the defendant to properly prepare his defense and to protect him from subsequent prosecution for the same offense. *Id.* at 618. We held that due process was not violated because the defendant was on notice of the statutory maximum sentence that accompanied the crime charged and because there was no argument on how the lack of citation to the sentencing statute may have affected the defense. *Id.* at 618–19.

Similarly, Chauvin was on notice that if convicted of theft he faced a statutory maximum sentence of 60 months. *See* Minn.Stat. § 609.52, subd. 3(3)(a); *see also McCollum*, 640 N.W.2d at 618 (noting that the statutory maximum sentence, ascertainable from the indictment, gave defendant notice of the potential sentence associated with the offense). Chauvin was also on specific notice of the state's intent to depart from the presumptive guideline sentence. Approximately three weeks before trial the state informed him that it intended to seek an upward departure based on victim vulnerability and the career offender statute.

Chauvin's reliance on *Apprendi's* "elements" language is misplaced. The Supreme Court in *Apprendi* made the comparison of aggravating sentencing factors to elements in the context of the adequacy of proof to satisfy the Sixth Amendment's jury trial requirement, not in the context of giving adequate notice of the charges presented to satisfy the Sixth and Fourteenth Amendments' more relaxed due process and notice requirements. *See Apprendi*, 530 U.S. at 494 & n. 19, 120 S.Ct. 2348. We hold that the aggravating factor of victim vulnerability need not be alleged in the complaint.

**B.**

■ We also recognize that, under the facts of this case, even if the omission of victim vulnerability from the charging instrument was erroneous, the error would be harmless beyond a reasonable doubt. The Supreme Court recently determined that *Blakely* errors are not structural and thus are subject to a harmless error analysis. *Washington v. Recuenco*, —— U.S. ——, ——, 126 S.Ct. 2546, 2553, 165 L.Ed.2d 466 (2006). Furthermore, we have determined that the inadequacy of a complaint is subject to a harmless error analysis. *See Becker*, 351 N.W.2d at 927. An error is harmless beyond a reasonable doubt if "the verdict was surely unattribut-

able to the error." *Townsend v. State,* 646 N.W.2d 218, 223 (Minn.2002).

In *Becker* we concluded that "the complaint was defective because it failed to state the specific time period in which the multiple acts of sexual abuse allegedly occurred." 351 N.W.2d at 927. But we held that the error was harmless because "prior to trial [the defendant] availed herself of the discovery opportunities under the procedures authorized by our criminal rules." *Id.* Because the defendant had adequate notice we held that the deficient complaint did not prejudice her defense. *Id.*

Chauvin fails to argue how the lack of a citation to the sentencing statute in the complaint prejudiced his defense; nor are we able to identify a way in which it could have. For several weeks before trial Chauvin knew the state would seek to enhance his sentence by presenting evidence that (1) he had at least five prior felony convictions and (2) that the victims were particularly vulnerable. After the guilty verdict, the district court held a lengthy hearing during which Chauvin successfully defended himself against one of these aggravating factors when the state withdrew its motion for an upward sentencing departure based on the career offender statute. This demonstrates' Chauvin's ability to adequately prepare his defense on sentencing issues. Thus, even if the failure to include the second sentencing factor in the complaint was error, it would be harmless.

Affirmed.

PAGE, Justice (concurring).

I concur in the result.