PAGE, Justice
(concurring in part, dissenting in part).
The court remands Mahdi’s case for a hearing to comply with the requirements of Miller v. Alabama, — U.S. -, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012), for the judge or a jury to consider whether a life sentence with the possibility of release after 30 years is a more appropriate sentence than the mandatory life sentence without the possibility of release (LWÓR), which he is now serving. The case law on which the court relies to justify its decision is inapposite. In my view, the appropriate *262 remedy is to sever the heinous-crimes statute as it relates to juveniles and revive the most recent constitutionally valid versions of Minn.Stat. §§ 244.05, subd. 4(b), 609.106, subd. 2(1), and 609.185 (2012) for juvenile offenders only, and then remand to the district court for imposition of a life sentence with the possibility of release after 30 years. The previous versions of these statutes did not provide for a departure mechanism for the district court to consider whether, despite the defendant’s youth, an LWOR sentence was more appropriate. See Minn.Stat. §§ 244.05, subd. 4, 609.106, subd. 2(1), and 609.185 (2004). Reviving these statutes is the appropriate remedy because, as an issue of substantive law, fixing the sentence to be imposed for first-degree premeditated murder is a legislative function. Under the separation of powers, see Minn. Const, art. .Ill, § 1, our court lacks the authority to remand Mahdi’s case for a hearing to consider whether a life sentence with the possibility of release after 30 years is more appropriate than an LWOR sentence. The court’s decision to modify the unconstitutional sentencing scheme now in place and replace it with a judicially created scheme usurps the Legislature’s authority to amend its own statutes. For that reason, I respectfully dissent from part III of the court’s decision.
I.
The court is correct that Mahdi’s LWOR sentence is unconstitutional under Miller, - U.S. at -, 132 S.Ct. at 2460. The court attempts to remedy this constitutional violation by remanding to the district court for a hearing to determine whether LWOR or life imprisonment with the possibility of release after 30 years is the appropriate sentence. The court contends that State v. Chauvin supports its conclusion that we have the power to fashion such a sentencing hearing. 723 N.W.2d 20 (Minn.2006). But in Chauvin we considered only whether the district court had the authority to impanel a sentencing jury, not whether we had authority to amend a statute setting forth the punishment for a criminal offense. Id. at 22 (determining that a district court could empanel a sentencing jury under Blakely to comply with the Minnesota Sentencing Guidelines). We said that “impaneling a sentencing jury did not change the punishment available for the underlying substantive offense. It merely changed the steps that the court took in arriving at a sentence already authorized by the legislature.” Id. at 25. Accordingly, we held that the district court had the authority to impanel a sentencing jury. Id. at 27. In contrast, here the court “change[s] the punishment available for the underlying substantive offense,” id. at 25, by judicially amending the sentencing statute to give the district court two options in sentencing Mahdi: LWOR or life with the possibility of release after 30 years. But the sentencing statutes enacted by the Legislature include only one option: LWOR. See Minn.Stat. § 609.106, subd. 2(1) (2012) (“The court shall sentence a person to [LWOR] [if] the person is convicted of first-degree [premeditated] murder[J” (emphasis added)). Therefore, this case does not fall within the rule established in Chauvin.[1]
*263 The eourt also contends that, as in Chauvin, “allowing the district court to hold a Miller hearing will ‘effectuat[e] the legislative policy’ to the extent the heinous-crimes statute reflects a legislative preference for LWOR sentences for heinous crimes.” This statement assumes that the Legislature’s only policy consideration in mandating LWOR sentences for all offenders was its desire to impose the harshest sentence available on those convicted of first-degree premeditated murder. But there is reason to believe that the Legislature’s policy preferences are more nuanced than the court hypothesizes.[2] It may be that the Legislature’s policy preferences had as much to do with ensuring sentencing consistency as imposing the harshest sentence available. See Minn. Sent. Guidelines l.A. (“The purpose of the Sentencing Guidelines is to establish rational and consistent sentencing standards that reduce sentencing disparity... .”). And although the court’s decision advances the policy of imposing the harshest sentence available, it frustrates the policy of facilitating consistency in sentencing. In any event, it is for the Legislature, not this court, to weigh these competing policy interests and to decide the appropriate sentence, knowing that a mandatory LWOR sentence cannot be imposed on juveniles.
In my view, severing that part of the heinous-crimes statute that is unconstitutional and utilizing the statutory-revival remedy we applied in Fedziuk v. Commissioner of Public Safety, not the remedy we applied in Chauvin, is the appropriate vehicle to remedy Mahdi’s unconstitutional sentence. 696 N.W.2d 840 (Minn.2005). In accordance with Fedziuk, I conclude that the court should remand Mahdi’s case to the district court with instructions to apply the most recent constitutionally valid sentencing statute to Mahdi’s first-degree premeditated murder conviction. This remedy is preferable to the court’s because it ensures the district court will impose a legislatively authorized sentence and allows us to avoid speculating about the Legislature’s policy preferences.
In Fedziuk, the respondent argued that the 2003 amendments to Minnesota’s Implied Consent Law violated her due process rights because they removed the requirement for prompt judicial review of a *264 prehearing revocation. Id. at 342. We agreed and considered the appropriate remedy for the constitutional violation. Id. at 849. The district court had revived the 1980 version of the law to remedy the due process problem. Id. The 1980 version of the law provided for no pre-hearing license revocation. Id. The Commissioner argued that the district court should have severed only the 2003 amendments and revived the most recent constitutional version of the law. On appeal, we observed that “[w]hen a statute is unconstitutional, it is not a law and it is as inoperative as if it had never been enacted.” Id. We noted that an unconstitutional law, being void, cannot repeal an existing law. Id. Only the latest amendment is severed, however, and any previous constitutional version remains in effect. Id. Accordingly, we revived the version of the Implied Consent Law that existed immediately before the unconstitutional 2003 amendments. Id.[3]
Applying these principles to this case, I conclude that the appropriate remedy is to revive the 2004 version of the statute. See Minn.Stat. § 244.05, subd. 4 (2004) (providing that an inmate serving a mandatory life sentence for first-degree premeditated murder is eligible for supervised release after serving 30 years). Under Miller, the heinous-crimes statute is categorically unconstitutional as to juvenile homicide offenders. - U.S. -, 132 S.Ct. 2455, 2460, 183 L.Ed.2d 407 (2012). Therefore, under Fedziuk, the Legislature’s 2005 attempt to amend this statute to require juvenile defendants convicted of first-degree premeditated murder to serve an LWOR sentence was ineffective and “as inoperative as if it had never been enacted” with respect to them. See Act of June 2, 2005, ch. 136, art. 2, §§ 3-5, 2005 Minn.Laws 901, 922 (codified at Minn.Stat. §§ 244.05, subd. 5, 609.106, subd. 2(1) (2012)); Miller, — U.S. at -, 132 S.Ct. at 2460; Fedziuk, 696 N.W.2d at 349. Consequently, Minn.Stat. § 244.05, subd. 4 (2004), was, in effect, never repealed with respect to juveniles and provides a legislatively mandated sentence of life imprisonment with the possibility of release after 30 years for juvenile offenders convicted of first-degree premeditated murder. See Fedziuk, 696 N.W.2d at 349; see also Horsley v. State, 121 So.3d 1130, 1132 (Fla.Dist.Ct.App.2013) (reviving previous version of a sentencing statute because the current version of a statute was unconstitutional under Miller), rev. granted (Fla. Nov. 14, 2013); Rodriguez-Giudicelli v. State, 143 So.3d 947, 948 (Fla.Dist.Ct.App.2014) (same). Minnesota Statutes § 244.05, subd. 4 (2004), did not permit the district court to consider whether, notwithstanding the defendant’s youth, a LWOR was more appropriate. In contrast to the court’s application of Chauvin, statutory revival does not require the court to create a sentence not authorized by the Legislature. Instead, by reviving the previous version of the statute, we simply return to a sentence previously authorized by the Legislature. See Horsley, 121 So.3d at 1132 (“The advantage of relying upon the *265 doctrine of statutory revival is that we simply revert to a solution that was duly adopted by the legislature itself..., ”). Similarly, the court would not have to speculate about what the Legislature’s policy preferences might be if it simply revived the most recent constitutionally valid version of the heinous-crimes statute. See id. (“[T]he doctrine of statutory revival ... avoid[s] the type of ‘legislating from the bench’ that would be required if we were to essentially rewrite the existing statute with original language which we feel might better meet the policy goals of the current legislature.”).
The court argues that “[b]ecause the 2005 amendment to the heinous-crimes statute, Minn.Stat. § 609.106, is not unconstitutional on its face, a Fedziuk solution sweeps too broadly and undermines the legislative policy expressed in section 609.106.” Practically speaking, it is hard to see how imposing a sentence under the previous version of the statute is “unworkable,” particularly when, under the court’s own remedy, the same sentence remains a possibility. Moreover, as noted above, the heinous-crimes statute is facially unconstitutional as to the entire category of juvenile offenders. See Miller, — U.S. at -, 132 S.Ct. at 2469, 2473 n. 13. Nothing prevents the court from reviving the 2004 statute only to the extent it applies' to juvenile offenders. See Horsley, 121 So.3d at 1132 (reviving previous version of a sentencing statute to hold that the only sentence available for a juvenile convicted of capital murder is life imprisonment with the possibility of release after 25 years). Therefore, applying Fedziuk is practically workable, and doctrinally required.[4]
By remanding for a hearing and giving the district court the option of imposing a sentence of life imprisonment with the possibility of release after 30 years, the court abandons our longstanding practice of strictly adhering to the limits imposed by statutory text. The court recently reaffirmed our strict adherence to statutory limitations in its decision in Axelberg v. Commissioner of Public Safety, 848 N.W.2d 206 (Minn.2014). In that case, Axelberg drove under the influence of alcohol in order to escape serious bodily injury at the hands of her abusive husband. Id. at 207. The Commissioner of Public Safety revoked Axelberg’s driver’s license. Id. Axelberg sought judicial review. Id. At the implied consent hearing, Axelberg attempted to assert the affirmative defense of necessity, which allows an individual to escape liability for a wrongful act if the person had to do the act to avoid instant and overwhelming harm. Id. at 207 n. 2. The statute at issue in Axelberg, however, strictly limited the issues one could raise in license revocation hearings *266 and did not include the necessity defense among them. Id. at 208 & n. 3. Because the necessity defense was not included within; this limitation, we concluded that the defense was not available. Id. at' 208. In so concluding, we noted that “if the Implied Consent Law needs revision in order to make it embody a more sound public policy, the Legislature, not the judiciary, must be the reviser.” Id. at 213.
The court attempts to distinguish this case from Axelberg on the basis that here “the Legislature has not yet expressed its policy preference in light of the new rule Miller pronounced.” This is precisely the point. In the absence of legislative guidance post-Miller, the court’s assertion that remand for a hearing will “effectuate the legislative policy” is mere conjecture, without basis in the statutory text. As the court explains in Axelberg, it is the prerogative of the Legislature, not the judiciary, to determine what constitutes sound public policy and to make the statutory revisions necessary to reflect that policy determination.
“Those who are bound by our decisions usually believe they can take us at our word. Not so today.” Wheaton Coll. v. Burwell, — U.S. -, 134 S.Ct. 2806, 2808, 189 L.Ed.2d 856 (2014) (Sotomayor, J., dissenting). Contrary to the court’s rhetoric in Axelberg, the court today judicially amends the heinous-crimes statute to allow for a sentence, and sentencing procedure, not permitted by the Legislature.
II.
“As sound as the public policy arguments may be, the only way to reach the conclusion that. [a Miller hearing] is available here is through an act of pure judicial will.”
Axelberg v. Comm’r of Pub. Safety, 848 N.W.2d 206, 212 (Minn.2014).
The court contends that our inherent judicial power gives us the authority to remand for a hearing and to permit the district court to impose a life sentence with the possibility of release after 30 years. The court is wrong. Our inherent judicial power only allows us to provide a remedy in the absence of legislative authorization when it is necessary to achieve a unique judicial function. Shattuck, 704 N.W.2d at 147-48. The regulation of procedural matters is a unique judicial function. State v. Johnson, 514 N.W.2d 551, 554 (Minn.1994).[5] Matters of substantive law, however, are exclusively within the province of the Legislature. Id.
The determination of whether to remand to consider if an LWOR sentence or a life sentence with the possibility of release after 30 years encroaches upon a legislative function, therefore, turns on whether Minnesota’s sentencing scheme is a matter of substantive or procedural law. Because our state’s sentencing scheme is a matter of substantive law, I conclude that the court lacks the power to authorize a Miller hearing.
We have long held that the Legislature has the sole authority to “fix the limits of punishment for criminal acts.” Shattuck, 704 N.W.2d at 148; see also State v. Osterloh, 275 N.W.2d 578, 580 (Minn.1978) (“Determination of what conduct constitutes a criminal offense and the punishment that ought to be imposed ... is peculiarly a legislative and not a judicial function.” (citation omitted) (internal quotation marks omitted)); State v. Moilen, 140 Minn. 112, *267 115, 167 N.W. 345, 346 (Minn.1918) (“It is the exclusive province of the Legislature to declare what acts ... shall constitute a crime, to prohibit the same and impose appropriate penalties for a violation thereof.”). When it enacted the current version of the heinous-crimes statute, the Legislature removed the district court’s discretion to impose any sentence other than LWOR. Minn.Stat. § 244.05, subd. 4(a) (“An inmate serving a mandatory life sentence [for first-degree premeditated murder] must not be given supervised release under this section.”); Minn.Stat. § 609.106, subd. 2(1) (“The court shall sentence a person to [LWOR] [if] the person is convicted of first-degree [premeditated] murder[.]”). Thus, under the current version of the relevant statutes, the only option the district court has in sentencing Mahdi for his first-degree premeditated murder conviction is LWOR, a sentence that is unconstitutional under Miller.
Yet, the court remands this case to the district court for that court to consider whether, in light of Mahdi’s youth, an LWOR sentence or a life sentence with the possibility of release after 30 years is the appropriate remedy. In so doing, the court, not the Legislature, has “fix[ed] the limits of punishment” available in sentencing Mahdi, in contravention of the Legislature’s authority.[6] See Shattuck, 704 N.W.2d at 148; see also Commonwealth v. Brown, 466 Mass. 676, 1 N.E.3d 259, 264-66 (2013) (stating “[i]t is the province of the Legislature to define crimes and set penalties in the first instance” and rejecting the Commonwealth’s approach at remedying the unconstitutional sentencing statute in light of Miller because “the Commonwealth’s approach would have sentencing judges creating an entirely new penalty scheme ad hoc”). Accordingly, this court is without authority to remand to the district court to conduct a hearing. Instead, the appropriate remedy is to sever the unconstitutional provision, revive the 2004 version of Minn.Stat. § 244.05, subd. 4, and sentence Mahdi to life imprisonment with the possibility of release after 30 years. See Minn.Stat. § 244.05, subd. 4 (2004).
III.
In sum, I conclude that, by remanding to the district court to decide after a hearing whether Mahdi should be sentenced to LWOR or life imprisonment with the possibility of release after 30 years, we encroach on the Legislature’s responsibility to fix the limits of punishment. Accordingly, I would remand to the district court with instructions to impose a sentence of life imprisonment with the possibility of release after 30 years. See Minn.Stat. § 244.05, subd. 4 (2004).

. Indeed, the present case is more similar to our decisions in State v. Shattuck, 704 N.W.2d 131 (Minn.2005), and State v. Barker, 705 N.W.2d 768 (Minn.2005), two cases decided post-Blakely involving an unconstitutional statute that allowed the judge, rather than the jury, to make findings of fact supporting aggravated sentences. In both of those cases, the district court had not convened a sentencing jury before imposing aggravated sentences, Barker, 705 N.W.2d at 770-71; Shattuck, 704 N.W.2d at 134-35, and in each case, the State asked us to remand to the district court with instructions to convene a sentenc *263 ing jury to determine whether the aggravating sentencing factors existed. Barker, 705 N.W.2d at 775-76; Shattuck, 704 N.W.2d at 147-48. We declined, reasoning that "engaft[ing] sentencing-jury ... requirements onto the Sentencing Guidelines and sentencing statutes would require rewriting them, something our severance jurisprudence does not permit.” Shattuck, 704 N.W.2d at 148; accord Barker, 705 N.W.2d at 775-76. Instead, we "left to the legislature the task of amending the Minnesota sentencing scheme to comport with the requirements of Blakely...." Barker, 705 N.W.2d at 775; see Shattuck, 704 N.W.2d at 147-48.

. For example, this year the Legislature considered several bills that would have made Minnesota’s sentencing of juvenile homicide offenders consistent with Miller. Several of these bills would have favored sentencing consistency over longer sentences by mandating that juveniles convicted of first-degree premeditated murder be eligible for release after 20 years, H.F. 3061, Art. 6, § 1, 88th Minn. Leg. 2014; S.F. 2273, Art. 4, § 1, 88th Minn. Leg. 2014. Other bills would have favored longer sentences by allowing the district court to impose LWOR sentences on juvenile homicide offenders if, after a sentencing hearing, the court concludes that an LWOR sentence is appropriate in light of the defendant’s culpability and youth. S.F. 982, § 3, 88th Minn. Leg. 2014; H.F. 2540, § 3, 88th Minn. Leg. 2014; H.F. 1217, § 3, 88th Minn. Leg. 2014. There is nothing in the record before us, other than the unconstitutional statute itself, giving us any indication as to what the legislative policy priorities may have been when the 2005 amendments were enacted.

. We have applied the statutory-revival rule in other cases as well. See, e.g., Deegan v. State, 711 N.W.2d 89, 98 (Minn.2006) (reviving an older version of a statute because the amended statute violated defendants' right to the assistance of counsel); State v. One Oldsmobile Two-Door Sedan, Model 1946, 227 Minn. 280, 288, 35 N.W.2d 525, 530 (1948) (“An unconstitutional statute, being void and inoperative, cannot repeal or in any way affect an existing one.”); State v. Luscher, 157 Minn. 192, 195, 195 N.W. 914, 916 (1923) (“The statute being void is inoperative for any purpose and made no change in the existing law.”); see also Frost v. Corp. Comm’n of Okla., 278 U.S. 515, 527-28, 49 S.Ct. 235, 73 L.Ed. 483 (1929) (reviving previous version of a statute when amendment was unconstitutional).

. The court’s chosen remedy is also more complicated than the court realizes. Remand for a hearing will require the sentencer to find facts, and make determinations based on those facts, as to whether a sentence of LWOR should be re-imposed on Mahdi. Arguably, such a hearing would raise concerns under Blakely depending on how one reads the court’s judicially-amended statute. " 'Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt,’ ’’ 542 U.S. at 301, 124 S.Ct. 2531 (quoting Apprendi v. New Jersey, 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000)), with “statutory maximum” defined as the "maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant," id. at 303, 124 S.Ct. 2531. If the statutory maximum of the court's new statute is life with the possibility of release after 30 years, and facts need to be found to impose a sentence of LWOR, then Blakely requires those facts to be found by a jury, not the judge. Of course, the applicability of Blakely depends on the words of the statute, which is why amendment of the statute must be done by the Legislature, not this court.

. The court is correct that in Chambers v. State we concluded that the Miller rule is procedural for retroactivity purposes. 831 N.W.2d 311, 328 (Minn.2013). But that characterization is only relevant to Miller’s retroactive application, id. at 327-30, not to a court’s substantive amendment to the statutory scheme.

. Nothing prevents the Legislature from fixing the limits of punishment for juveniles in the same way that the court does today or in some other manner. The Legislature’s failure to fix the unconstitutional statute, however, does not give the court the authority to act on the Legislature’s behalf. Moreover, the court's decision to modify the unconstitutional sentencing scheme now in place, rather than reviving the most recent constitutional version of the law, removes any incentive for the Legislature to amend the statutory scheme so that it complies with Miller’s requirements.